**U.S. MARKETING CONCEPTS, INC. Appellant (Defendant Below),**

**Herbert J. Weber and Advertising & Marketing Services, Inc., Appellants (Garnishee Defendants Below),**

v.

**DON JACOBS BUICK–SUBARU, INC. and Don Jacobs Toyota, Inc., Appellee (Plaintiffs Below).**

No. 02A03–8908–CV–325.

Court of Appeals of Indiana, Third District.

Dec. 27, 1989.

Rehearing Denied Feb. 14, 1990.

John H. Heiney, Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, for appellants.

---

Ward W. Miller, Bloom, Bloom, More and Miller, Fort Wayne, for appellee.

STATON, Judge.

Defendant U.S. Marketing Concepts, Inc. (USMC) and garnishee defendants Herbert J. Weber (Weber) and Advertising & Marketing Services, Inc. (AMS) appeal from an order in favor of Don Jacobs Buick–Subaru, Inc. and Don Jacobs Toyota, Inc. (Jacobs) extending a judgment against USMC to Weber and AMS.[1]

Weber presents us with two issues on appeal:

1. Whether transfers from USMC to Weber and to AMS were made with the intent to hinder, delay and defraud Jacobs?

2. Whether sufficient consideration for the transfers would preclude an inference of fraudulent intent?

We affirm.

USMC was an Indiana corporation specializing in advertising promotions for automobile dealers.[2] Don Jacobs Buick–Subaru, Inc. and Don Jacobs Toyota, Inc. are Wisconsin corporations that participated in one of USMC's promotions. The promotion involved vouchers entitling the holder to a vacation in Mexico. Jacobs purchased the vouchers from USMC to give to customers when they purchased an automobile. The entity (not a party) supplying the vouchers to USMC experienced financial difficulties and discontinued the Mexican vacations. Several of Jacobs' customers held vouchers which were not honored. Jacobs sued USMC for the dishonored vouchers and obtained a judgment for approximately $26,-000.[3] Jacobs then filed a verified motion for proceedings supplemental naming Weber and AMS as garnishee defendants.

Weber was the sole shareholder and president of USMC and of its successor corporation, AMS. USMC's management formed AMS in January of 1987. Both USMC and AMS were advertising agencies. The only thing that distinguished the two was that AMS was not involved in the promotion of vacations to Mexico. Weber testified that the reason for "winding down" USMC in late August or September of 1986 was because complaints over the vouchers for a vacation in Mexico were becoming "excessive." R. 136. In the process of winding down USMC many of its assets were transferred to Weber and AMS. Jacobs attacked these transfers as fraudulent through its verified motion for proceedings supplemental. Ind.Rules of Procedure, Trial Rule 69(E).

Although the trial court made findings of fact and conclusions of law we will address this appeal as a general judgment supported by partial findings. See *First Bank v. Samocki Bros. Trucking Co.* (1987), Ind. App., 509 N.E.2d 187, 192–3, *rehear. den., trans. den.,* and *In re Marriage of Hudak* (1981), Ind.App., 428 N.E.2d 1333, 1335. On appeal from a general judgment we look at the evidence most favorable to the decision of the trial court and will affirm if the decision can be sustained on any legal ground. *Potts v. Offutt* (1985), Ind.App., 481 N.E.2d 429, 430–1.

I.

*Intent*

The trial court ordered that Jacobs could enforce judgment against garnishees Weber and AMS because transfers made to them from USMC were fraudulent.

According to Weber's testimony at the hearing for proceedings supplemental the transfers USMC made to him consisted of bonuses, commissions, and reimbursements for ordinary business expenses. Jacobs contends these transfers were made with the intent to hinder, delay and defraud Jacobs as creditor. On appeal we will neither reweigh the evidence nor rejudge the credibility of witnesses; our review is limit-

---

**1.** We will refer to appellants collectively as Weber.

**2.** USMC filed voluntary bankruptcy after the hearing on the verified motion for proceedings supplemental. The United States Bankruptcy Court vacated its stay pending the outcome of Jacobs' suit against USMC.

**3.** The original judgment was obtained in Wisconsin at a trial by jury.

ed to a consideration of the evidence and reasonable inferences therefrom which support the judgment of the trial court. *Kruse, Kruse & Miklosko v. Beedy* (1976), 170 Ind.App. 373, 353 N.E.2d 514, 524, *reh. den., trans. den.* The trial judge, as fact finder, determines the presence or absence of fraudulent intent. We need only decide if there is sufficient evidence to support that determination.

■ Intent can be inferred from certain indicia called "badges of fraud." Some of the badges from which fraudulent intent may be inferred include: the transfer of property by a debtor during the pendency of a suit; a transfer of property that renders the debtor insolvent or greatly reduces his estate; a series of contemporaneous transactions which strip a debtor of all property available for execution; secret or hurried transactions not in the usual mode of doing business; any transaction conducted in a manner differing from customary methods; a transaction whereby the debtor retains benefits over the transferred property; little or no consideration in return for the transfer; a transfer of property between family members. *Jones v. Central Bank of St. Johns and Barbara J. Wierick* (1989), Ind.App., 547 N.E.2d 887.

When there is a concurrence of several badges of fraud "an inference of fraudulent intent may be warranted." *Arnold v. Dirrim* (1979), Ind.App., 398 N.E.2d 442, 446. There is sufficient evidence in the record to support the finding of fraudulent intent made by the trial court.

■ Weber testified that USMC was "winding down" in late August or September of 1986 "because the complaints [about the vouchers] were starting to become excessive ...". R. 136. Weber also testified that the "company [USMC] was wound down so that we could continue to do business *with the threat of this Mexican fiasco* ...". R. 209 (our emphasis). This testimony would support an inference that property transferred by USMC after August or September 1986 was transferred for the sole purpose of avoiding the liability resulting from the "Mexican fiasco." It is a reasonable inference that in August or September of 1986 USMC recognized the possibility of a lawsuit.

Many of these transfers did not fit into the usual mode of doing business. Plaintiff's exhibit I consists of cancelled checks drawn from USMC's account. There were several unorthodox transactions. On December 7, 1986, USMC issued a check for $3,130.77 to buy an Arabian horse. Weber testified that this was a bonus to him. On December 16, 1986, USMC issued a check for $4,300.00 to Harman Remodeling which Weber testified was for construction work at his home. Weber testified that this was a commission.

The transfers that occurred after September 1986 stripped USMC of all property available for execution and rendered USMC insolvent. It is also clear that AMS was intended to be a continuation of the same business free of "the threat of this Mexican fiasco." The trial court could reasonably infer that the only reason for transferring assets to AMS was to avoid repercussions from the claims resulting from the dishonored vouchers.

There was a close relationship between Weber, USMC and AMS: Weber was president and sole shareholder of both corporations; he had control of the assets both before and after the transfers.

This concurrence of several badges of fraud supports the finding of fraudulent intent made by the trial court.

## II.

### Consideration

■ We need not consider whether there was fair consideration for the transfer. Although inadequate consideration can be a badge of fraud it does not require a finding of fraudulent intent. *Arnold* at 447. We have already determined that there is a concurrence of several of the badges of fraud and that the trial court did not err in finding fraudulent intent.

Affirmed.

HOFFMAN and CHEZEM, JJ., concur.