**UNITED STATES of America, Plaintiff,**

v.

**Gloria VELLALOS, Matio Vellalos, Vernon Raymond Vellalos, Countrywide Funding Corp., McCabe Paving Co., Defendants.**

**COUNTRYWIDE FUNDING CORP., Third Party Plaintiff,**

v.

**AKAMAI ELECTRICAL SERVICES, INC., Third Party Defendant.**

Civ. No. 91–00068 HMF.

United States District Court, D. Hawaii.

Jan. 10, 1992.

Daniel Bent, Michael Chun, Thomas Moore, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Cades Schutte Fleming & Wright, Edward Delappe Boyle, Ernest H. Nomura, Honolulu, Hawaii, for Countrywide Funding Corp.

Gerson Grekin & Wynhoff, William ʹJ. Wynhoff, Honolulu, Hawaii, for Gloria and Matio Vellalos.

Hall & Crumpton, David W. Hall, Honolulu, Hawaii, for Vernon Raymond Vellalos.

Torkildson Katz Jossem Fonseca, Jaffe & Moore, Ronald I. Heller, Honolulu, Hawaii, for Akamai Elec. Services, Inc.

## ORDER GRANTING DEFENDANT VERNON RAYMOND VELLALOS' MOTION TO DISMISS CLAIM BASED ON HAWAII UNIFORM FRAUDULENT TRANSFER ACT

FONG, District Judge.

### INTRODUCTION

On Monday, December 2, 1991, the court held a hearing on a motion to dismiss filed by defendant Vernon Raymond Vellalos ("Vernon") on October 17, 1991. Third party defendant Akamai Electrical Services, Inc. filed a joinder in this motion on November 6, 1991. On November 13, 1991, plaintiff United States of America filed a memorandum in opposition. Defendants Gloria and Matio Vellalos filed a statement of no opposition to Vernon's motion to dismiss on November 27, 1991.

### BACKGROUND

This case is a civil action brought by the United States to reduce to judgment outstanding federal tax assessments made against defendants Gloria Vellalos and Matio Vellalos and to foreclose the federal tax liens on one parcel of real property. These taxes and penalties were assessed on June 26, 1986 for taxes which should have been paid during the years 1982 through 1985. The amounts are as follows:

| | |
|---|---|
| 1982 | $ 220,139.11 |
| 1983 | 197,385.43 |
| 1984 | 71,174.87 |
| 1985 | 289,469.64 |

Defendants Gloria and Matio have not paid these assessments. Pursuant to 26 U.S.C. § 6321, tax liens arose in favor of the United States against all property and rights to property of Gloria and Matio as of the assessment date of June 26, 1986. A notice of tax lien was filed with the Bureau of Conveyances, Registrar, State of Hawaii ("Registrar") on June 26, 1986. On September 26, 1989, a notice of tax lien was filed against Gloria and Matio, and on January 19, 1990, the IRS filed a notice of federal tax lien relative to each assessment against Gloria and Matio in which it designated Vernon as the nominee and/or agent of Gloria and Matio. Vernon is the son of Gloria and Matio.

By deed dated February 26, 1986, and recorded March 20, 1986 (before the government filed notice of the assessments), defendant Vernon acquired record title to certain real property in Honolulu, Hawaii (the "Mililani property"). The government now seeks to foreclose on this property, notwithstanding that it is held in Vernon's name. In support of foreclosure, the government first contends that Vernon was the nominee or agent of Gloria and Matio when the Mililani property was conveyed to him. Alternatively, the government contends that this conveyance was fraudulent because it was designed and executed by defendants Gloria and Matio with the actual or constructive intent to hinder, delay, or defraud their creditors, and was, therefore, of no effect pursuant to the Uniform Fraudulent Transfer Act, codified at Haw.Rev.Stat. §§ 651C–1 to 651C–10. The government has also filed a claim against defendants CountryWide Funding Corporation and McCabe Paving Company, who may claim an interest in the Mililani property.

Defendant Vernon filed the instant motion claiming that the Hawaii claim extinguishment period has run on the fraudulent conveyance claim by the government, and therefore, that the portion of the complaint alleging fraudulent conveyance under the Hawaii statute must be dismissed.

## DISCUSSION

The Hawaii Uniform Fraudulent Transfer Act contains a provision which extinguishes all causes of action which are not brought

> within four years after the transfer ... or, if later, within one year after the transfer or obligation was or could reasonably be discovered by the claimant.

Haw.Rev.Stat. § 651C–9(1).

It is not disputed that the state claim brought by the United States falls outside the time limitations period established by this provision.[1] The United States asserts, however, that it "is not bound by state statutes of limitations or subject to the defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940).

■ The *Summerlin* case that the government relies upon involved a Florida statute which provided that "[a]ny ... claim or demand [against an estate] not so filed within eight months from the time of the first publication of the notice to creditors shall be void." *Id.* at 416, 60 S.Ct. at 1020. The Supreme Court held the United States was not bound by this state limitations period in pursuing a claim which it had acquired against an estate. *Summerlin* stands for the proposition that the state may not limit the federal government's general common law right to collect debts owed to it.

However, the instant case does not involve a scenario where the United States is being prevented from collecting a debt. In fact, the United States has a valid claim for tax assessments against Gloria and Matio Vellalos. At issue, rather, is whether this court should apply the Hawaii fraudulent transfer statute to hold that Gloria and Matio are the true owners of the Mililani property which is currently held in Vernon's name. If the state statute is applicable, then the United States may be able to reach the Mililani property to satisfy the debt owed by Gloria and Matio Vellalos.

■ There is an important distinction between cases involving the government's common law right to collect on a debt and cases involving a carefully delimited state statutory right. In the instant case, the government seeks to take advantage of rights created by Haw.Rev.Stat. §§ 651C–1 to 651C–10, which are a codification of the Uniform Fraudulent Transfer Act ("UFTA"). In contradistinction to the statute of limitations present in the Florida statute considered in *Summerlin* and its progeny,[2] the UFTA contains an "extinguishment" provision. Where a statute of limitations bars the remedy after the expiration of a certain period of time, the UFTA's extinguishment provision bars the entire cause of action. Furthermore, the Commission on Uniform Laws has explicitly stated that this extinguishment provision was designed to bar actions asserted by the United States under the *Summerlin* principle:

> This section is new. Its purpose is to make clear that lapse of the statutory periods prescribed by the section bars the right and not merely the remedy.... The section rejects the rule applied in the *United States v. Gleneagles Inv. Co.*, 565 F.Supp. 556, 583 (M.D.Pa.1983) (state statute of limitations held not to apply to action by United States based on Uniform Fraudulent Conveyance Act).

Unif. Fraudulent Transfer Act § 9, 7A U.L.A. 665–66 (1984) (Commentary).

■ It is clear that the intent of the UFTA is to completely extinguish the statutory cause of action following the expiration of the delineated time period. The next question, then, is whether the state of Hawaii has the authority to do so with respect to rights initially acquired by the United States under the state statute.

The Tenth Amendment to the United States Constitution provides:

---

**1.** The conveyance itself took place on February 26, 1986 and was recorded on March 20, 1986. The United States does not claim that it could not have reasonably discovered this recorded conveyance by March 20, 1986. Accordingly, the four year period would have expired, at the latest, by March 20, 1990. This lawsuit was not filed until February 1, 1991.

**2.** *See* cases cited in note 3, *infra*.

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

U.S. Const. amend. X. The law of real property has traditionally been within the province of the states. The government has cited no federal statute that would restrict the states' rights to legislate in the area of fraudulent real estate transfers.

Here, the government is seeking to take advantage of a right that is entirely within the domain of the state. This right was created by a state statute and specifically limited by the text of that statute. This is not a straightforward question of debt collection under the common law as was addressed by the Supreme Court in *Summerlin*. The government seeks to stretch the *Summerlin* holding to cover all state laws which in any way peripherally affect the collection of a debt by the government. To endorse the government's position would have the effect of stripping away state authority without any legitimate reason short of expediency on the part of the Internal Revenue Service. Such a holding would be an unjustified and improper expansion of the *Summerlin* principle.[3]

To the extent the federal government desires an unlimited statute of limitations period with which to combat fraudulent transfers, it can create a *federal* fraudulent transfer statute, and explicitly adopt such an unlimited limitations period. The court notes that although there is no such federal statute, 26 U.S.C. § 6901(c) sets forth a summary procedure by which the IRS can collect taxes from transferees who are found to be fraudulent transferees under state law. This section, however, has even a shorter limitations period than the Hawaii state law. *See* 26 U.S.C. § 6901(c) (initial transferee remains liable for a period of *one year* after the expiration of the period of limitation for assessment against the transferror). In fact, it is only because the federal government missed this statute of limitations that it is attempting to bring an action directly under the state statute instead of under the summary procedure set forth in 26 U.S.C. § 6901(c).

Because the framers of the Uniform Fraudulent Transfer Act have been specific in providing for a literal extinguishment of the cause of action upon expiration of the prescribed time period; because this court holds that the state has the power to extinguish a cause of action which was entirely within its power to create; and because the government has not provided this court with any convincing authority or justification for exempting itself from the state extinguishment provision, the court finds that the United States has no cause of action under the Hawaii Uniform Fraudulent Transfer Act. Accordingly, defendant Vernon's motion to dismiss this claim is GRANTED.

IT IS SO ORDERED.

---

**3.** The court notes that courts in two other circuits have come to the opposite conclusion. *See United States v. Wurdemann*, 663 F.2d 50 (8th Cir.1981) (state statute of limitations on fraudulent conveyance cause of action didn't apply to federal government in the context of enforcing a tax claim); *United States v. Fernon*, 640 F.2d 609 (5th Cir.1981) (although Florida fraud statute governed existence and extent of liability in government's fraudulent conveyance suit against taxpayers' son and son's wife, neither state statute of limitations nor laches barred government's right to recover value of fraudulently transferred property in partial satisfaction of outstanding tax deficiencies).

However, this court believes that these decisions are the result of an overly mechanical application of the dicta in *Summerlin* without serious consideration of the significant implications such a rule has for state sovereignty. For example, the *Wurdemann* court disposed of the issue in one sentence, without even considering how the fraudulent conveyance issue differs from the *Summerlin* case. *See* 663 F.2d at 51. Likewise, the *Fernon* court also failed to analyze the issue. In a discussion that extends for less than a paragraph, it merely presumes that *Summerlin* is controlling precedent. 640 F.2d at 612. Accordingly, this court declines to follow these two cases from the Fifth and Eighth Circuits. It does not appear that the Ninth Circuit has yet considered this specific issue.