UNITED STATES of America, Plaintiff,

v.

William E. SMITH, et al., Defendants.

No. 3:94–CV–188RM.

United States District Court, N.D. Indiana, South Bend Division.

Oct. 8, 1996.

Clifford D. Johnson, Office of the United States Attorney, South Bend, IN, Douglas W. Snoeyenbos, U.S. Department of Justice, Washington, DC, for U.S.

Stephen L. Eslinger, Ralph A. Caruso, II, Botkin Leone and Eslinger, South Bend, IN, for William E. Smith, Beverly K. Smith.

Brian E. Smith, Monterey, IN, pro se.

Belinda K. Smith, Monterey, IN, pro se.

Jeffrey A. Dickstein, Tulsa, OK, for William E. Smith Trust.

### MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on three [1] related motions: plaintiff United

---

1. Mr. Smith also moved for summary judgment

asserting that he did not receive notices of defi-

States's motion for summary judgment, defendant William E. Smith's cross-motion for partial summary judgment and defendant William E. Smith Trust's cross-motion for summary judgment.

William E. and Beverly K. Smith, who are husband and wife, acquired a plot of land by warranty deed from Agnes Hartman ("Hartman property") on August 23, 1974. Several years later, on March 22, 1977, Mr. Smith established the William E. Smith Family Trust naming Mrs. Smith and Marvin Kornblith as trustees. The stated purpose of the trust is "to accept rights, title and interest in and to real and personal properties" conveyed by the grantor, "so that William E. Smith [grantor] can maximize his lifetime efforts through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare." The Declaration of Trust further provides that "[t]he purport of [the] instrument is to convey property to Trustees ... to provide for a prudent and economical administration by natural persons acting in a fiduciary capacity...." Both Mr. and Mrs. Smith have indicated through affidavits that the Trust was established to accomplish their estate planning goals. On the same day that Mr. Smith created the Family Trust, Mrs. Smith transferred her interest in the Hartman property for ten dollars to Mr. Smith by quit-claim deed, and indicated in a separate document that she was executing the deed solely to accomplish the transfer of the Hartman property to the Family Trust; accordingly, Mrs. Smith executed an affidavit in which she expressed this intention. Mr. Smith's understanding was that Mrs. Smith transferred the property in trust only, with the explicit understanding that he was required to transfer the Hartman property to the Family Trust. Three days later, on March 25, 1977, Mr. Smith transferred the Hartman property by warranty deed to the Family Trust for ten dollars' consideration and gave Mrs. Smith 50 units of beneficial interest in the Trust.

Four years later, on December 16, 1981, the Family Trust was modified. The Order of Modification provides, among other things, that the trust is now named the William E. Smith Trust and its purpose is to "convey certain properties to the Trustees, to constitute a Trust, and to provide for a prudent and economical administration by natural persons acting in a fiduciary capacity for the benefit of the beneficiaries." The Order of Modification was signed by William E. Smith, grantor, and Beverly K. Smith and Darrel R. Gudeman, trustees.

Despite, or perhaps because of, Mr. Smith's attempts to manage his financial affairs "prudently and economically", he did not pay part or all of his federal income taxes from 1982–1986, thus drawing the attention of the Internal Revenue Service. A delegate of the Secretary of the Treasury made the following assessments against Mr. Smith: on March 9, 1987, an assessment totaling $19,420.95 for unpaid income taxes for the year 1982; on March 16, 1987, an assessment totaling $17,942.84 for unpaid income tax for 1983; and on January 6, 1992, an assessment totaling $278,242.89 for unpaid income tax for the years 1983 through and including 1986. The United States brought this suit to reduce the assessments against Mr. Smith to judgment, seeking a lien on all of Mr. Smith's assets, including the Hartman property. The United States seeks foreclosure on the Hartman property, alleging that the Trust is invalid and that the conveyance of the Hartman property to the Trust was fraudulent. Accordingly, the Trust was made party to this suit. Mrs. Smith intervened, asserting that if the Trust is deemed void, her interest in the Hartman property should subsist.[2] The arguments of all of the parties, whether in motions, cross-motions, or supplemental

---

ciency for taxes owed for the years 1982–1983. On June 27, 1995, Mr. Smith withdrew his motion for partial summary judgment because evidence exists that Mr. Smith received notice for 1983–1986. Mr. Smith presumably did not intend to withdraw his challenge to the notice for 1982.

**2.** The United States filed a summary judgment motion regarding Mrs. Smith's claim to the Hartman property. Because that issue has not been fully briefed, this order does not address it.

briefs, have been considered by the court.[3]

## I. *Summary Judgment Standard*

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent.

The parties cannot rest on mere allegations in the pleadings, or upon conclusory allegations in affidavits. The court must construe the facts as favorably to the non-moving party as the record will permit, and draw any permissible inferences from the materials before it in favor of the non-moving party, as long as the inferences are reasonable. The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law.

*Conery v. Bath Associates,* 803 F.Supp. 1388, 1392–1393 (N.D.Ind.1992) (citations omitted).

## II.

### A. *Jurisdiction*

■ In its cross-motion for summary judgment, the William E. Smith Trust asserts that because the United States did not comply strictly with 26 U.S.C. §§ 7401 and 7403, the court lacks subject matter jurisdiction over this action. Sections 7401 and 7403 require authorization and request by the Secretary of the Treasury and the direction of the Attorney General before commencement of a civil tax collection action such as this. The Trust attached to its summary judgment motion the authorization of the Secretary of

the Treasury and the direction of a delegate of the Attorney General to commence this action against Mr. and Mrs. Smith. The Trust argues that because the United States can produce no evidence that this action was authorized as against the Trust, the court cannot assert jurisdiction over the entire action. The Trust demands more of the United States than §§ 7401 and 7403 require.

26 U.S.C. § 7401 makes clear that "[n]o civil action for the collection or recovery of taxes ... shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced." Once the action is commenced, however, 26 U.S.C. § 7403(b) requires that "[a]ll persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto." The Trust asserts that these sections require that the United States acquire specific authorization to proceed against the Trust. This action is against Mr. Smith for the collection of unpaid taxes; the Trust was made a party to the suit because it holds title to property that the United States alleges was fraudulently conveyed by Mr. Smith. Thus, the documentation authorizing and directing a suit against Mr. Smith, but not naming the Trust, is sufficient to comply with §§ 7401 and 7403, and the Trust's motion for partial summary judgment is denied.

### B. *Certificates of Assessment*

■ The United States asks the court to enter judgment as a matter of law on the tax assessments made against Mr. Smith for the years 1982–1986. The United States argues that it has established, through the corresponding Certificates of Assessments, that income tax assessments were made against Mr. Smith, and that the assessments are presumptively correct. Mr. Smith contends that the United States is not entitled to the presumption of correctness because the bas-

---

**3.** The briefing for these motions originally covered unpaid income taxes for the years 1979–1986 for both Mr. and Mrs. Smith, but the action has been pared down to only the unpaid income taxes of Mr. Smith for the years 1982–1986.

Although the court disregarded any arguments in the briefs that focussed solely on the Smiths' pre-1982 tax liability, the court was careful to consider any argument that could be regarded as pertaining to Mr. Smith's 1982–1986 liability.

es of the assessments are that Mr. Smith received unreported income.

■ Assessments generally are entitled to a "presumption of correctness" that imposes upon the taxpayer the burden of proving that the assessment is erroneous. *Welch v. Helvering*, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Lerch v. Commissioner*, 877 F.2d 624, 631 (7th Cir.1989); *Pfluger v. Commissioner*, 840 F.2d 1379, 1382 (7th Cir.1988). In certain situations, however, the court will not recognize the presumption if the assessment is shown to be "without rational foundation" or is "arbitrary and erroneous." *Zuhone v. Commissioner*, 883 F.2d 1317, 1325 (7th Cir.1989) (*quoting Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir.1987)). In *Zuhone*, the Seventh Circuit noted that "[t]he arbitrary and excessive doctrine is a challenge to the deficiency assessment itself on the basis that it bears no factual relationship to the taxpayer's liability, not a challenge to any proof offered by the Commissioner...." 883 F.2d at 1325. Accordingly, the court does not review "the commissioner's motives or administrative policy or procedure in making the determination." *Zuhone v. Commissioner*, 883 F.2d at 1325. Further, the court "will not look behind an assessment to evaluate the procedure and evidence used in making the assessment.... Rather, courts conduct a *de novo* review of the correctness of the assessment, imposing the risk of nonpersuasion on the taxpayer." *Ruth v. United States*, 823 F.2d at 1094 (citations omitted).

■ When the assessment is based on the taxpayer's receipt of unreported income, however, the court must find some evidence that linked the taxpayer with the tax-generating activity. *Zuhone v. Commissioner*, 883 F.2d 1317, 1325 (7th Cir.1989); *Weimerskirch v. Commissioner*, 596 F.2d 358, 360–361 (9th Cir.1979). This narrow exception recognizes that when receipt of unreported income is the basis of the taxpayer's liability, the taxpayer is in the difficult position of proving the nonexistence of income in order to challenge the assessments levied against him. *Anastasato v. Commissioner*, 794 F.2d 884, 887 (3rd Cir.1986) ("Given the obvious difficulties in proving the nonreceipt of in-

come, we believe the Commissioner should have to provide evidence linking the taxpayer to the tax-generating activity in cases involving unreported income, whether legal or illegal.") Thus, the United States must come forward with some evidence that links the taxpayer to the alleged income generating activity. This burden is not substantial and requires only a minimal evidentiary foundation. In short, the United States, when basing an assessment on unreported income, cannot merely rest on the presumption of correctness that is normally afforded to the Certificate of Assessment.

Mr. Smith argues that the United States's assessments are based on his allegedly receiving unreported income; thus, the United States must come forward with some evidence that links him to the charged income. Because the United States has only put forth the assessments, and none of the evidence the delegate of the Secretary of the Treasury used in calculating the assessments, Mr. Smith argues that the United States cannot benefit from the presumption of correctness normally afforded to certificates of assessment.

The United States argues that Mr. Smith has not shown that the assessment for 1982 and the first assessment for 1983 are based on unreported income as opposed to disallowed deductions, so the United States argues that the presumption of correctness should apply to these two assessments. The courts have not addressed which party must establish that the assessments are based on unreported income, thus triggering the need for evidence linking the taxpayer to the charged income. The United States seems to argue that the taxpayer should make this initial showing, but the information regarding the basis of the taxpayer's deficiency is solely in the government's hands. It would be an anomaly to require the taxpayer, when sued by the United States to reduce an assessment to judgment, to come forward with evidence showing the basis of the of deficiency. Here, the United States has only introduced into evidence the certificates of assessment. Although the taxpayer generally carries the burden of negating the presumption of correctness, the taxpayer cannot ef-

fectively challenge the assessments without information regarding the basis of the assessment. The court recognizes that the United States may well have informed Mr. Smith of the appropriate bases for the assessments long before this litigation began, but without evidence in the record regarding the bases of the assessments, the court cannot bar Mr. Smith from challenging the assessments as if they were based on unreported income.[4]

Mr. Smith asserts that the United States has put forth no evidence linking him to any unreported income for 1982–1983. The court agrees. Accordingly, the United States, at this stage of the litigation, cannot reduce the assessment for 1982 and the first assessment for 1983 to judgment.

■ The United States concedes that the bases of the second assessment for 1983 and the assessments for 1984–1986 are based on unreported income. Mr. Smith argues that the United States has not come forward with any evidence linking him to the allegedly income-producing activity. The United States asserts that the evidence needed to link Mr. Smith to the unreported income is available in the evidentiary material presented by Mr. Smith in opposition to the United States's summary judgment motion. Mr. Smith, in an effort to show that the 1983–1986 assessments were based on unreported income, attached to his brief a notice of deficiency sent to him by the Internal Revenue Service, which explains the basis of the charged unreported income. The notice includes a list of checks payable to Mr. Smith or for his benefit, and calculates his income based on the amount of the checks. The United States argues that the notice of deficiency links Mr. Smith to the income-producing activity and so allows the United States to benefit from the presumption of correctness.

Although the notice of deficiency shows that the United States had evidence linking Mr. Smith to the income-producing activity for the 1983–1986 assessments, the notice itself is not evidence sufficient to presume that the assessments are correct. *Rapp v. Commissioner*, 774 F.2d 932, 935 (9th Cir. 1985) ("While these records reflect that the IRS had before it information linking the Rapps with income-producing activities, including employment, the sale of their residence, and involvement in a business, that underlying information does not itself appear in the record.") The United States' burden is not high; it need only introduce into the record some evidence that links Mr. Smith to the alleged income, and once it does so the court will not evaluate the procedure or weight of the evidence used in making the assessment. *Gold Emporium, Inc. v. Commissioner*, 910 F.2d 1374, 1378 (7th Cir.1990) (where evidence of telephone calls, sales records, and bank deposits were introduced and thus established a link between the taxpayer and income-producing activity). Because the United States has not come forward with any evidence linking Mr. Smith to the alleged income-producing activity, the assessments are not presumed correct and cannot be reduced to judgment at this stage of the litigation.

■ Mr. Smith also argues that the United States cannot reduce the assessment for 1982 to judgment because proper notice of the deficiency was not given.[5] He asserts that 26 U.S.C. § 6213(a) requires that the United States notify a taxpayer by mail before collecting on assessments, and that his Individual Master File MCC Transcript ("IMF") shows that notice was not sent for 1982. Mr. Smith cites *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir.1994), for the proposition that the government must place a "494" code in a taxpayer's IMF each time notice is sent. The lack of a 494 code, Mr. Smith asserts, proves that the Untied

---

4. The government easily could have avoid this conundrum by introducing documents showing the bases of the assessments. Without such information, the court must allow Mr. Smith, for summary judgment purposes, to challenge the assessments as if they were based on unreported income.

5. Mr. Smith originally argued that he had not received notice for the tax deficiencies for 1982–1986. In a June 27, 1995 motion, Mr. Smith indicated that evidence does exist that shows that he received Notices of Deficiency for 1983–1986. Accordingly, the court considers Mr. Smith's arguments regarding notice only for 1982.

States did not comply with the notice requirement, and thus it cannot reduce the 1982 assessment to judgment.

The United States argues that the absence of a 494 code does not indicate that a notice of deficiency was not sent. A 494 code only appears on an IRS transcript of an account if the notice of deficiency is computer generated. Thus, if a return is selected for examination, a "420" examination code is placed in the taxpayer's IMF, which prevents a 494 code from being input. A manually-generated notice of deficiency would not result in a 494 code in the taxpayer's IMF. The United States introduced a memorandum regarding Mr. Smith's tax liability, and asserts that this document indicates that a notice of deficiency for 1982 and 1983 was sent to Mr. Smith on September 24, 1986. In addition, a receipt of certified mailing by the I.R.S. to Mr. Smith is dated September 25, 1986.

The document that the United States introduced, however, does not support the conclusion that Mr. Smith was given notice for his 1982 deficiency. The memorandum states the following: "The years 1982 and 1983 were examined and closed, based on information available at the time, on 9/9/86. This examination resulted in taxable income for 1983 of $25,000.00 from unreported wage income. The increase in tax for 1983 was $8,448.00 and penalties totaled $5,967.63. A Notice of Deficiency was issued on 9/24/86 and the tax was assessed on 3/16/87." The memorandum supports only that Mr. Smith was sent notice for the 1983 assessment. Furthermore, although the United States has explained the lack of a 494 code sufficiently, it has not come forward with any evidence that supports the proposition that the I.R.S. sent Mr. Smith a notice of deficiency for his 1982 tax assessments. Mr. Smith, however, offers no other evidence to support his contention that the I.R.S. did not send him a notice of deficiency for the assessed deficiency for 1982. In short, a genuine issue of fact exists regarding whether the I.R.S. complied with the notice requirement of 26 U.S.C. 6213(a). Thus, Mr. Smith's motion for partial summary judgment, to the extent that it seeks to bar the United States's claim as it relates to the 1982 assessment, must be denied.

## C. Validity of Trust

The United States asserts that it has valid tax liens on the Hartman property and seeks foreclosure of the liens. Although the United States has not yet acquired tax liens against Mr. Smith because it has not yet reduced the relevant assessments to judgments, the court will address the United States's ability to reach the Hartman property if a trial reveals that the assessments should be reduced to judgment. The United States argues that when the assessments were levied, Mr. Smith had title to the Hartman property because the conveyance of the property to the Trust should be considered a nullity. The United States argues that the Trust was not valid, thus the conveyance to the Trust was ineffective.

■ The United States first argues that the Trust is invalid because no valid purpose or object can be ascertained from the Trust's terms. The Trust's stated purpose is to "convey certain properties to the Trustees, to constitute a Trust, and to provide for a prudent and economical administration by natural persons acting in a fiduciary capacity for the benefit of the beneficiaries." The Trust's original terms stated that the Trust was established so that Mr. Smith "can maximize his lifetime efforts through the utilization of his Constitutional rights."

The existence of a trust is a matter of state law; Indiana law provides the following formal requirements to establish a trust:

(a) A trust in either real or personal property is enforceable only if there is written evidence of its terms bearing the signature of the settlor or his authorized agent.

(b) Except as required in the applicable probate law for the execution of wills, no formal language is required to create a trust, but its terms must be sufficiently definite so that the trust property, the identity of the trustee, the nature of the trustee's interest, the identity of the beneficiary, the nature of the beneficiary's in-

terest and the purpose of the trust may be ascertained with reasonable certainty. IND.CODE 30–4–2–1.

Any attempt to create an express trust that omits one or more of the formal requirements will automatically fail, *Pavy v. Peoples Bank & Trust Co.,* 135 Ind.App. 647, 195 N.E.2d 862 (1964), but trusts are construed so as to implement the intent of the settlor and the purposes of the trust. *Matter of Walz,* 423 N.E.2d 729, 733–734 (Ind.Ct. App.1981). Thus, the court examines the facts and circumstances surrounding the execution of the trust to determine the grantor's intent at the time of execution. *Id.*

The United States argues that no purpose is reasonably ascertainable from the terms of the Trust. The purpose of the Trust may be broad, but it is not so ambiguous as to jeopardize its validity. The stated purpose of the Trust is to allow the trustees to hold various assets for the benefit of the those who hold units of beneficial interest. The trustees have the power and the duty to accept Mr. Smith's services and remuneration and to manage the Trust's assets in a prudent and economical fashion. This purpose is reasonably ascertainable from the terms of the original declaration of trust and order of modification.

The United States next argues that the Trust should be found invalid because Mr. Smith's purpose in creating the Trust was to defraud the United States. The United States asserts that family trusts, which are similar to the William E. Smith trust, have been condemned by several circuit courts because they are recognized as tax avoidance schemes. The United States cites several cases in support of this proposition, including *Schulz v. Commissioner,* 686 F.2d 490 (7th Cir.1982); *Pfluger v. Commissioner,* 840 F.2d 1379 (7th Cir.1988); *Neely v. United States,* 775 F.2d 1092 (9th Cir.1985); *Holman v. United States,* 728 F.2d 462 (10th Cir.1984); *Hanson v. Commissioner,* 696 F.2d 1232 (9th Cir.1983); *Vnuk v. Commissioner,* 621 F.2d 1318 (8th Cir.1980). These cases, however, pertain to the I.R.S.'s ability to disregard a family trust for tax purposes. When a taxpayer sets up a family trust and assigns all of the family's income to the trust,

the I.R.S. can disregard the trust and attribute the income to the taxpayer. Here, the United States asks the court to hold the Trust invalid, thus leaving Mr. Smith, not the Trust, with title to the Hartman property. The cases cited by the United States, although giving the government the authority to tax Mr. Smith for income received by the Trust, do not give this court the authority to invalidate the Trust.

The United States asserts that Mr. Smith's purpose in establishing the Trust was to defraud the United States, but the United States puts forth no evidence that would establish that Mr. Smith was engaging in fraud at the time that he established the Trust. Generally, a court should construe a trust agreement in favor of validity. *Meyer v. Northern Indiana Bank and Trust Co.,* 490 N.E.2d 400 (Ind.Ct.App.1986); *Hinds v. McNair,* 413 N.E.2d 586 (Ind.Ct.App.1980). Under Indiana law, though, a court has equitable powers to invalidate a trust agreement when improperly executed or if circumstances surrounding its execution so warrant. IND.CODE 30–4–3–30.

The court has examined the declaration of trust, order of modification, and affidavits of the Smiths for evidence of fraud at the time of creating the Trust. The Smiths, through their affidavits, indicate that their purpose in establishing the Trust was to facilitate estate planning, and the terms of the Trust, as indicated above, reveal only that the Smiths attempted to manage their economic affairs through the use of a family trust. The circumstances surrounding the use of the Trust to report Mr. Smith's income provide ample evidence upon which the I.R.S. could attribute the Trust's income to Mr. Smith, but there is not enough evidence to conclude that the Smiths' purpose when creating the Trust was to defraud. Thus, the court cannot invalidate the Trust on this record.

### D. Hartman Property

The United States also argues that Mr. Smith fraudulently conveyed the Hartman property to the Trust, so the conveyance should be disregarded and Mr. Smith deemed the owner of the property. Mr.

Smith and the Trust argue that Mr. Smith did not transfer the Hartman property with the intent to defraud and that the statute of limitations bars the United States's attempt to void the conveyance. The United States has responded that pursuant to *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), the United States is not bound by state statutes of limitations. *See also United States v. City of Palm Beach Gardens*, 635 F.2d 337, 339 (5th Cir.1981); *United States v. Podell*, 572 F.2d 31, 35 n. 7 (2d Cir.1978); *Guaranty Trust Co. v. United States*, 304 U.S. 126, 132–133, 58 S.Ct. 785, 788–789, 82 L.Ed. 1224 (1938) (United States exempt from operation of statutes of limitations); *Silverman v. Commodity Futures Trading Comm'n*, 549 F.2d 28, 34 (7th Cir. 1977) ("[T]he United States is not bound by state statutes of limitations or subject to the defense of laches in enforcing its rights.")

■■■ The defendants acknowledge the general rule as set forth in *Summerlin*, but argue that, in this case, the state statute of limitations should apply to the United States. The defendants cite *United States v. Vellalos*, 780 F.Supp. 705 (D.C.Hawaii 1992), *aff'd* 990 F.2d 1265 (9th Cir.1993), which held that the United States was barred by the applicable state statute of limitations when it attempted to void a fraudulent conveyance. The United States counters that the majority of courts have held that even when seeking to void a fraudulent conveyance, the United States is not bound by the applicable state statute of limitations. *See, e.g., United States v. Fernon*, 640 F.2d 609 (5th Cir.1981); *United States v. Wurdemann*, 663 F.2d 50 (8th Cir.1981); *United States v. Parker House Sausage Co.*, 344 F.2d 787 (6th Cir. 1965). The Seventh Circuit has not specifically addressed the issue, but has applied *Summerlin* in other circumstances. *See, e.g. United States v. Tri–No Enters., Inc.*, 819 F.2d 154 (7th Cir.1987) (United States is generally not subject to state statutes of limitations).

The *Vellalos* case, cited by the defendants, argued that the *Summerlin* case "stands for the proposition that the state may not limit the federal government's general common law right to collect debts owed to it." 780

F.Supp. at 707. In *Summerlin*, the United States, as assignee of a claim against an estate, sought to collect on the claim outside of the state's statute of limitations. The *Summerlin* Court stated that "[i]t is well settled that the United States is not bound by state statutes or subject to the defense of laches in enforcing its rights." The *Vellalos* court would make a distinction that while the United States may seek recovery of its claims outside of the limitations period, the United States cannot take advantage of state-created rights, such as the right to void a fraudulent conveyance, outside of the limitations period. *United States v. Vellalos*, 780 F.Supp. at 707.

This court does not read *Summerlin* as narrowly as did the court in *Vellalos*. The Supreme Court in *Summerlin* allowed the United States to bring a claim against a decedent's estate, which is a state-created right, after the limitations period had run because even when the United States accepts a claim by assignment "it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." 310 U.S. at 417, 60 S.Ct. at 1020. The *Vellalos* approach would allow the United States to pursue its claims outside of the limitations period, but would use the same statute of limitations to prevent the United States from using state-created doctrines to collect on its judgment. This distinction seems unwarranted given the *Summerlin* Court's explicit declaration against limiting the United States's ability to collect on its debts.

Furthermore, in *Vellalos*, the United States sought to avoid the taxpayer's conveyance by using the Hawaii Fraudulent Transfer Act, which extinguishes an action to void a fraudulent conveyance if not brought within four years of the transfer. The *Vellalos* court relied on this extinguishment provision and held that the United States was not able to proceed under the act because the cause of action was extinguished, not merely time barred. In other words, there was no cause of action under Hawaiian law that the government could assert. Indiana's law on fraudulent conveyances contains no extinguishment provision, so the rationale of *Vel-*

*lalos* is inapplicable. *See* IND.CODE § 32–3–1–14.

In sum, although the Seventh Circuit has not decided whether the United States can take advantage of a fraudulent conveyance statute outside the state statute of limitations, this court agrees with the various other circuits that have allowed the United States to do so.

The United States seeks to void Mr. Smith's transfer of the Hartman property to the Trust because it was accomplished for fraudulent purposes. The principles of Indiana law on fraudulent conveyances are well established:

> All conveyances or assignments, in writing or otherwise, of any estate in lands, or of goods or things in action, every charge upon lands, goods or things inaction, and all bonds, contracts, evidences of debt, judgments, decreed, made or suffered with the intent to hinder, delay or defraud creditors or other persons of their lawful damages, forfeitures, debts or demands, shall be void as to the persons sought to be defrauded.

IND.CODE 32–2–1–14.

 Fraudulent intent is a question of fact under Indiana law, and a conveyance will not be deemed fraudulent merely because the conveyance was accomplished without the exchange of valuable consideration. IND. CODE 32–2–1–18; *United States Marketing Concepts v. Don Jacobs,* 547 N.E.2d 892 (Ind. Ct.App.1989). Although the determination of whether a conveyance was fraudulent involves the consideration of various factors, certain circumstances so frequently indicate that the transfer is to defraud creditors that they are recognized as indicia or "badges of fraud." *Id.* at 894. For example, fraudulent intent may be inferred from

> the transfer of property by a debtor during the pendency of a suit; a transfer of property that renders the debtor insolvent or greatly reduces his estate; a series of contemporaneous transactions which strip a debtor of all property available for execution; secret or hurried transactions not in the usual mode of doing business; any transaction conducted in a manner differing from customary methods; a transac-

tion whereby the debtor retains benefits over the transferred property; little or no consideration in return for the transfer; a transfer of property between family members.

*Jones v. Central Nat'l Bank of St. Johns,* 547 N.E.2d 887, 889–890 (Ind.Ct.App.1989) (*citing Jackson v. Russell,* 533 N.E.2d 153, 155 (Ind.Ct.App.1989)); *United States Marketing Concepts, Inc. v. Don Jacobs,* 547 N.E.2d 892, 894 (Ind.Ct.App.1989). No one badge of fraud constitutes a per se showing of fraudulent intent. *Jones,* 547 N.E.2d at 890; *Johnson v. Estate of Rayburn,* 587 N.E.2d 182, 186 (Ind.Ct.App.1992) Badges of fraud must be "taken together to determine how many ... exist and if together they constitute a pattern of fraudulent intent." *Jones,* 547 N.E.2d at 890. The character of a sale or transfer of property must be judged by the circumstances existing at the time of the conveyance and not by subsequent events having no actual connection with the transaction. *Stamper v. Stamper,* 227 Ind. 15, 83 N.E.2d 184 (1949); *Deming Hotel Co. v. Sisson,* 216 Ind. 587, 24 N.E.2d 912 (1940); When all of the badges of fraud support an inference of fraudulent intent, a nonmovant must explain some of the inference away to survive summary judgment. *United States v. Denlinger,* 982 F.2d 233, 237 (7th Cir.1992)

The United States contends that several of these badges of fraud indicate that Mr. Smith's transfer of the Hartman property to the Trust was fraudulent. The United States first argues that because Mr. Smith created the Trust to further a fraudulent tax scheme and then used the Trust to claim the Smiths' income and deductions, he should have known that the I.R.S. would initiate legal action against him. *See United States v. Denlinger,* 982 F.2d 233, 236–237 (7th Cir. 1992). The defendants point out that no suit pending was against them when the Hartman property was transferred to the Trust, and the United States was not even a creditor of any of the defendants at that time. Although the United States was not a creditor of Mr. Smith or the Trust at the time of the conveyance, Mr. Smith attempted to attribute all of his income to the Trust and only claimed a consulting fee paid from the Trust on his tax

return. Mr. Smith reasonably should have known that his attempts to defer income would "be an invitation to legal action by the I.R.S." *Denlinger,* 982 F.2d at 236–237 (transfer of property to a trust voided as fraudulent).

The United States also argues that Mr. Smith retained all of the benefits of the transferred property because he was a beneficiary of the Trust. The evidence introduced by the defendants shows that after the transfer of the Hartman property, Mr. and Mrs. Smith and their minor children held all of the units of beneficial interest in the Trust. Neither Mr. Smith nor the Trust have introduced any evidence to negate the United States's position. Although no evidence in the record indicates whether Mr. Smith continued to use the Hartman property after the transfer, it is enough to support this badge of fraud that Mr. Smith and his family were the sole beneficiaries of the Trust after the transfer.

The United States contends that the transfer of the Hartman property was accomplished for little consideration, another badge of fraud. The United States points out that the deed for the transfer of the Hartman property to the Trust recites that the transfer was made for less than $100.00 consideration. The defendants have presented no evidence to counter this assertion. Further, because Mr. Smith and his family were the sole beneficiaries of the Trust, the transfer can be characterized as one between family members.

The United States argues that Mr. Smith's estate was greatly diminished after the transfer of the Hartman property. The defendants assert that after transferring the Hartman property, the Smiths continued to own another piece of property ("Leonard property") and that he was not insolvent after the transfer. Aside from his interest in the Leonard property, however, Mr. Smith has alleged ownership of no other assets. In fact, the stated purpose of the Family Trust is to accept rights, titles, and interest conveyed by Mr. Smith, including "the exclusive use of his lifetime services and all of his earned remuneration accruing therefrom." Although Mr. Smith continued to assert an interest in the Leonard property after the Hartman transfer, he had assigned nearly all of his assets to the Trust.

The defendants contend that neither the creation of the Trust nor the subsequent transfer of the Hartman property were effected to defraud the United States; rather, the defendants allege that all of these transactions were an attempt at estate planning. This contention, however, does not negate the reasonable inference that Mr. Smith intended to defraud the government when he transferred the Hartman property nor is it enough to withstand summary judgment. The concurrence of these badges of fraud lead to one reasonable inference: that Mr. Smith intended to defraud the government when he established the Family Trust and assigned it title to the Hartman property. The United States is entitled to judgment as a matter of law on this issue.

*III. Conclusion*

For the foregoing reasons, the court

(1) DENIES defendant Trust's motion for partial summary judgment (filed July 15, 1996 (# 106));

(2) DENIES defendant Mr. Smith's motion for summary judgment regarding the lack of notice of deficiency for 1982 (filed February 8, 1995 (# 38)); and

(3) DENIES in part and GRANTS in part plaintiff's motion for summary judgment (filed November 25, 1994 (# 23)).

SO ORDERED.