**LEE'S READY MIX AND TRUCKING, INC., Appellant–Plaintiff,**

v.

**Carl CREECH d/b/a Concrete Specialties and Concrete Specialties, Inc., Appellees–Defendants.**

No. 36A01–9506–CV–199.

Court of Appeals of Indiana.

Jan. 22, 1996.

Corinne R. Finnerty, McConnell & Finnerty, North Vernon, for Appellant.

Jon W. Webster, Webster & Webster, North Vernon, for Appellees.

## OPINION

BAKER, Judge.

Appellant-plaintiff Lee's Ready Mix and Trucking, Inc. (Ready Mix) appeals the trial court's judgment in favor of appellees-defendants Carl Creech d/b/a Concrete Specialties

and Concrete Specialties, Inc. Specifically, Ready Mix contends that the trial court erred in finding that it failed to prove: 1) that Creech fraudulently transferred substantially all of his assets to CSI in an attempt to defraud Ready Mix, 2) that any of the exceptions to the general rule limiting the liability of successor corporations for the debts of predecessor corporations were applicable to the present case, and 3) constructive fraud.

## FACTS

The undisputed facts reveal that Ready Mix is an Indiana corporation which owns and operates ready-mix concrete plants in Jackson, Jennings and Bartholomew counties in Indiana. From October 1992 until January 1993, Ready Mix sold ready-mix concrete to Creech who was operating Concrete Specialties as a sole proprietorship. During that period, Creech incurred a debt to Ready Mix of approximately $69,575.00. In December 1992, Ready Mix's president, Larry Lee, learned that Creech was having financial difficulties and that he would be unable to pay his debt. As a result, Lee introduced Creech to Ed Callaway and suggested that they form a partnership to bring in new investments and business for Concrete Specialties.

After meeting, Creech and Callaway agreed to form Concrete Specialties, Inc. (CSI) and entered into a Pre–Incorporation Agreement (Agreement) on January 14, 1993. The Agreement provided that Creech and Callaway would be the sole officers and shareholders of CSI and would receive 499 shares and 501 shares of stock respectively. Record at 718. The Agreement further provided that Callaway would contribute $1,000.00 to CSI as his initial capital contribution and would loan $50,000.00 [1] to CSI in an attempt to revitalize Creech's financial position. R. at 718. In return, Creech agreed to provide the equipment that he used in Concrete Specialties as his initial capital contribution. The Agreement also stated that neither CSI nor Callaway would be responsible for Creech's debts or become liable or responsible for them in any way. R. at 718.

CSI was incorporated on January 22, 1993, and began doing business on February 8, 1993. At that time, Creech was insolvent and had no collectible intangible assets. R. at 119. Over the next several months, CSI purchased approximately $200,000.00 of ready-mix concrete from Ready Mix. CSI opened and maintained its own accounts separate from those that Creech had maintained and paid Ready Mix in full for the concrete that it purchased. Although CSI also paid the debts owed to some of Creech's creditors, it did not pay Ready Mix for Creech's debts.

On June 21, 1994, Ready Mix filed an amended complaint against Creech d/b/a Concrete Specialties and Concrete Specialties, Inc., alleging that: 1) Creech failed and refused to pay his debt of $79,011.92,[2] 2) Callaway promised that CSI would pay Creech's debt within one year and failed to do so, 3) Creech fraudulently conveyed and transferred substantially all of his assets to CSI in an attempt to defraud Ready Mix, and 4) CSI both expressly and impliedly assumed liability for Creech's debt. R. at 117, 121–128. In response, CSI filed an answer on February 3, 1995, denying Ready Mix's allegations and asserting several affirmative defenses, including the statute of frauds and lack of consideration.

Following a bench trial, the trial court entered findings of fact and conclusions of law on March 17, 1995, finding that Ready Mix failed to meet its burden of establishing: 1) that Creech fraudulently conveyed and transferred substantially all of his assets to CSI in an attempt to defraud Ready Mix, 2) that CSI agreed to pay Ready Mix for Creech's debts, 3) promissory estoppel, 4) equitable estoppel, and 5) constructive fraud. R. at 242–45.

## DISCUSSION AND DECISION

### I. Standard of Review

We first note the deferential standard of review we are to employ in this case.

---

1. Callaway ultimately loaned CSI approximately $90,000.00.

2. Creech initially incurred a debt of $69,576.22. However, finance charges were added to this amount after February 8, 1993, bringing the total debt to $79,011.92.

The trial court entered special findings of fact and conclusions of law upon Ready Mix's motion. When a trial court enters specific findings of fact and conclusions of law under Ind.Trial Rule 52(A), we must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Board of Comm'rs v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 666, *trans. denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second whether the findings support the judgment. *Id.* A judgment will be reversed only if clearly erroneous. *Id.* Also, we note here that Ready Mix is appealing from a negative judgment, which we will reverse only if the evidence is without conflict, and all reasonable inferences to be drawn from the evidence lead to but one conclusion and the trial court has reached a different conclusion. *Williams v. City of Indianapolis Dep't of Pub. Works* (1990), Ind. App., 558 N.E.2d 884, 888, *trans. denied.* We will neither reweigh the evidence nor judge the credibility of witnesses. *Id.*

## II. Fraudulent Conveyance

Ready Mix contends the trial court erred in determining that it failed to meet its burden of establishing that Creech fraudulently conveyed and transferred substantially all of his assets to CSI in an attempt to defraud Ready Mix. Specifically, Ready Mix challenges several of the trial court's findings as well as its conclusion that the evidence presented at trial did not establish that Creech acted with fraudulent intent.

Fraudulent intent can be inferred from certain indicia called "badges of fraud." *U.S. Marketing Concepts, Inc. v. Don Jacobs Buick–Subaru, Inc.* (1989), Ind.App., 547 N.E.2d 892, 894. Some of the badges from which fraudulent intent can be inferred include: 1) the transfer of property by a debtor during the pendency of a suit; 2) a transfer of property that renders the debtor insolvent or greatly reduces his estate; 3) a series of contemporaneous transactions which strip the debtor of all property available for execution; 4) secret or hurried transactions not in the usual mode of doing business; 5) any transaction conducted in a manner differing from customary methods; 6) a transaction whereby the debtor retains benefits over the transferred property; 7) little or no consideration in return for the transfer; and 8) a transfer of property between family members. *Id.* When there is a concurrence of several badges of fraud an inference of fraudulent intent may be warranted. *Id.* However, no one badge of fraud constitutes a per se showing of fraudulent intent. *Jones v. Central Nat'l Bank of St. Johns* (1989), Ind.App., 547 N.E.2d 887, 890. Rather, the facts must be taken together to determine how many badges of fraud exist and if together they constitute a pattern of fraudulent intent. *Id.*

In the present case, the trial court made the following pertinent Findings of Fact regarding the badges of fraud:

18. [Creech] and [Callaway] are not related and CSI was formed and the assets transferred to CSI from [Creech] prior to any lawsuit being filed or any threat of litigation being made by [Ready Mix]. There is no fiduciary or confidential relationship between [Creech] and [Callaway] or between [Creech], [Callaway] and [Ready Mix].

19. [Callaway] never suggested to [Creech] that they should cheat, defraud, hinder or delay [Ready Mix] in collection of it's [sic] debt against [Creech]. [Ready Mix] has taken judgment against [Creech], but collection has been stayed by the Chapter 13 filing.

20. [Creech] was insolvent before he ever transferred any assets to CSI and the transfer of assets to CSI made [Ready Mix's] position no worse than it was before [Ready Mix] extended credit to [Creech].

21. None of the transactions between [Creech] and [Callaway] were secret or hurried.

22. [Creech] received a forty-nine percent (49%) interest in CSI in exchange for his assets.

R. at 244. The court then concluded that because none of the badges of fraud were present, Creech had not acted with fraudulent intent. Ready Mix, however, contends finding No. 18 is unsupported by the evi-

dence. Specifically, Ready Mix argues that Creech's transfer of property to CSI constituted a badge of fraud because it was done at a time when Creech should have recognized the possibility of a lawsuit. However, our review of the record reveals that Creech transferred the equipment to CSI in January of 1993, almost one year before Ready Mix filed its lawsuit against him. Further, at the time Creech formed CSI and transferred the equipment, Ready Mix had not threatened to bring a lawsuit against him. Instead, Lee attempted to strengthen Creech's financial position by introducing him to Callaway and suggesting that they form a partnership to bring in new investments and business. This evidence supports the trial court's finding that Creech transferred the equipment to CSI prior to the filing of any lawsuit, prior to any threat of litigation by Ready Mix, and prior to a time when Creech should have recognized the possibility of a lawsuit.

 Ready Mix next challenges the trial court's finding No. 21 that the transactions between Creech and Callaway were not secretive and hurried. Specifically, Ready Mix contends that the transactions were, in fact, secretive and hurried because, although Ready Mix knew that Creech and Callaway had formed CSI, it was not made aware that their Agreement limited CSI's liability for Creech's debts. While the record reveals that Ready Mix was not informed of this provision of the Agreement, we do not believe that Creech and Callaway had an obligation to do so. Here, Lee was responsible for introducing Creech and Callaway and suggesting that they form a partnership to bring in new investments. Lee also knew that Creech and Callaway had formed CSI. Further, despite its involvement in CSI's development, Ready Mix has not produced any contract, guarantee, letter, memo or other written document establishing that Creech or Callaway agreed to inform Ready Mix of the provisions of their Agreement. Thus, we believe that the evidence supports the trial

court's finding that the transactions between Creech and Callaway were neither secretive nor hurried.

 Ready Mix also claims that the trial court erred in finding that Creech's 49.9% interest in CSI constituted valuable consideration. Initially, we note that the trial court did not make such a finding. In finding No. 22, the trial court merely found that Creech received a 49.9% interest in CSI. We remind Ready Mix that we are limited to determining whether the evidence supports the trial court's findings and whether those findings support the judgment. We are not permitted to reweigh the evidence and rewrite the trial court's findings of fact. Thus, although Ready Mix urges us to compare the consideration given by Creech in exchange for his 49.9% interest with the consideration given by Callaway for his 50.1% interest in order to ascertain whether valuable consideration was given, he is simply asking us to reweigh the evidence. This we cannot do. The evidence supports the trial court's finding that Creech received a 49.9% interest in CSI.

 Lastly, Ready Mix challenges the trial court's finding No. 20 that Creech was insolvent before he transferred any assets to CSI. Specifically, Ready Mix argues that the trial court's finding regarding this badge of fraud was incomplete because the badge also requires a consideration of whether a transfer of property occurred that greatly reduced the debtor's estate. *See U.S. Marketing Concepts,* 547 N.E.2d at 894. Here, while conceding that Creech was insolvent at the time of the transfer, Ready Mix argues the evidence supports a finding that Creech's transfer of equipment greatly reduced his estate.[3] We agree. The record reveals that Creech transferred approximately $22,000.00 worth of equipment to CSI, which included all of his tangible assets. Our finding that this badge of fraud is incomplete,[4] however,

---

**3.** Insolvency occurs when a person's liabilities exceed his assets. *See* Black's Law Dictionary 716 (5th ed. 1979). Thus, a debtor can be insolvent yet still retain some assets.

**4.** Ready Mix also contends that in finding No. 20, the trial court erroneously found that the transfer

of assets to CSI made Ready Mix's position no worse than it was before Ready Mix extended credit to Creech. We disagree. The record reveals that Ready Mix extended unsecured credit to Creech on an open account and allowed him to incur a debt of $69,576.22. Further, Creech was already insolvent and unable to pay the debt

is alone insufficient to infer fraudulent intent. *See Jones,* 547 N.E.2d at 890 (no one badge of fraud standing alone is determinative of fraudulent intent).[5]

 Having determined that the evidence supports the trial court's findings, we must determine whether those findings support the court's conclusion that Ready Mix failed to meet its burden of establishing fraudulent intent. There is no precise formula for drawing the line as to when there are sufficient indicia supporting a finding of fraud. *Id.* The general rule is that when there is a concurrence of several badges of fraud, an inference of fraudulent intent may be warranted. *Id.* Because no one badge of fraud constitutes a per se showing of fraudulent intent, the facts must be taken together to determine how many badges of fraud exist and if together they constitute a pattern of fraudulent intent. *Id.* In the present case, the trial court concluded that none of the badges of fraud were present. Although we determined that the evidence supported a finding that Creech's transfer of equipment to CSI greatly reduced his estate, the existence of a single badge of fraud does not necessitate a finding of fraudulent intent. Here, we stated above that the evidence supports the trial court's findings that several of the other badges of fraud were not present. Thus, we find that the trial court's findings are sufficient to support its conclusion that Ready Mix failed to establish fraudulent intent.

## II. *Liability of Successor Corporation*

 Next, Ready Mix contends the trial court erred in determining that neither Cal-

laway nor CSI assumed Creech's debts. Specifically, Ready Mix claims that the court erred in finding that none of the exceptions to the general rule announced in *Winkler v. V.G. Reed & Sons, Inc.* (1994), Ind., 638 N.E.2d 1228, were applicable to the present case. In *Winkler,* our supreme court held that where one corporation purchases the assets of another, the buyer does not assume the debts and liabilities of the seller. *Id.* at 1233. The court, however, recognized several exceptions to this rule including: (1) an implied or express agreement to assume the obligation; (2) a fraudulent sale of assets done for the purpose of escaping liability; (3) a purchase that is a de facto consolidation or merger; or (4) instances where the purchaser is a mere continuation of the seller. *Id.*

With regard to the first *Winkler* exception, the trial court found that the Pre–Incorporation Agreement provided that neither CSI nor Callaway would be responsible for Creech's debts or become liable or responsible for them in any way. R. at 243. Further, although Ready Mix alleges that Callaway promised that CSI would try to pay Creech's debt if or when CSI became profitable, Ready Mix has failed to produce any writing, contract, guarantee, letter, memo or any written document to support its claim. R. at 243. These findings support the trial court's conclusion that Callaway and CSI did not expressly or impliedly agree to assume Creech's debt. Second, as we determined above, the evidence supports the trial court's Findings of Fact Nos. 18–22, which in turn support its conclusion that Ready Mix failed to establish that Creech fraudulently con-

to Ready Mix at the time that he transferred the equipment to CSI. Therefore, Creech's transfer of equipment to CSI did not make Ready Mix's position any worse than it was before it extended credit to Creech. The trial court's finding is supported by the evidence.

5. Ready Mix also argues that several other badges of fraud were present in the instant case. Specifically, Ready Mix argues that: 1) Creech and Callaway were involved in a series of contemporaneous transactions which only served to strip Creech of all property available for execution, 2) the transactions were conducted in a manner that differed from customary methods, and 3) Creech retained a benefit from the transferred property. The trial court did not make

findings regarding these badges of fraud. We recognize that when a party makes a written request for findings to the court prior to the admission of evidence, the trial court is required to make complete findings of fact. *Dahnke v. Dahnke* (1989), Ind.App., 535 N.E.2d 172, 175. However, we cannot say that the trial court's failure to make findings of fact on all of the badges of fraud rendered its findings incomplete. Rather, the badges of fraud that we referred to above are merely some of the factors that the trial court could consider in deciding whether to infer fraudulent intent. Thus, we decline to disturb the trial court's discretion and consider these badges on appeal.

veyed and transferred substantially all of his assets to CSI in an attempt to defraud Ready Mix. Thus, the second *Winkler* exception is inapplicable to this case. Next, regarding the fourth [6] *Winkler* exception, the trial court found that CSI continued to use the same name and some of the same equipment as Concrete Specialties. R. at 242, 243. However, the trial court also found that CSI and Concrete Specialties maintained separate accounts, that Creech did not transfer his accounts receivable or his accounts payable to CSI and that Ready Mix never billed CSI for Creech's debt. R. at 243. Further, CSI and Concrete Specialties had separate addresses. On the basis of this evidence, we cannot say that the trial court's conclusion that CSI was not a mere continuation of Concrete Specialties is clearly erroneous. Thus, the trial court's findings support its conclusion that Ready Mix failed to establish that an exception to the general rule announced in *Winkler* was applicable to the present case.

### III. Constructive Fraud

Next, Ready Mix challenges the trial court's Conclusion of Law No. 9 which provides:

9. [Ready Mix's] claim of constructive fraud fails because there was no duty existing by virtue of the relationship between [Callaway] and [Ready Mix], thus there were no representations or omissions made in violation of such duty nor reliance thereon by [Ready Mix]....

R. at 245.

 First, Ready Mix insists that whether a duty exists by virtue of the relationship between the parties is not an element of constructive fraud. We cannot agree. In constructive fraud, the law infers fraud from the relationship between the parties and the circumstances which surround them. *Mullen v. Cogdell* (1994), Ind.App., 643 N.E.2d 390, 401 *trans. denied.* The first element of constructive fraud is whether a duty exists by virtue of a relationship between the parties. *See id.* Thus, Ready Mix was required to prove that a duty existed between the parties by virtue of their relationship.

 Next, Ready Mix challenges the trial court's finding that no fiduciary or confidential relationship existed between Creech and Callaway or between Creech, Callaway and Ready Mix. R. at 244. Ready Mix contends that this finding is unsupported by the evidence. First, Ready Mix argues that Creech and Callaway, as the sole directors and officers of CSI, were in a fiduciary relationship as a matter of law. We agree. Here, CSI is a closely held corporation, as it has only two shareholders, and the shares are not publicly traded. *See W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, 570, *trans. denied.* We have held that shareholders in a close corporation stand in a fiduciary relationship to each other, and as such, must deal fairly, honestly and openly with the corporation and with their fellow shareholders. *Id.* Creech and Callaway, as the sole shareholders of CSI, stand in a fiduciary relationship to each other. Therefore, the trial court's finding that Creech and Callaway were not in a confidential or fiduciary relationship is contrary to the evidence. However, the existence of this relationship between Creech and Callaway is insufficient to establish that they owed a duty to Ready Mix for purposes of constructive fraud.

 Ready Mix, however, argues that the trial court erred in finding that no fiduciary or confidential relationship existed between Creech, Callaway and Ready Mix. In support of its argument, Ready Mix cites *City Nat'l Bank v. Goshen Woolen Mills Co.* (1903), 35 Ind.App. 562, 69 N.E. 206, for the proposition that the directors and shareholders of an insolvent corporation have a fiduciary duty to hold the corporation's assets in trust for the corporation's creditors. Although it is unclear, Ready Mix appears to be arguing that Creech and Callaway had a fiduciary duty to hold Concrete Specialties' assets in trust for Ready Mix. We believe that Ready Mix's argument is misplaced.

 First, because Concrete Specialties was a sole proprietorship and not a corporation, we question whether *City Nat'l Bank* is applicable to this case. Further, although we

---

**6.** Ready Mix does not appear to be arguing that the third exception is applicable.

agree that Creech and Callaway would have a fiduciary duty to hold CSI's assets for CSI's creditors if CSI became insolvent, we cannot agree that Creech and Callaway had a fiduciary duty to hold Concrete Specialties' assets for Ready Mix. As we stated above, where one corporation purchases the assets of another, the buyer does not assume the debts and liabilities of the seller. *See Winkler*, 638 N.E.2d 1228. Thus, we cannot say that Creech and Callaway assumed a fiduciary duty to Ready Mix simply by purchasing Concrete Specialties' assets. Further, although Ready Mix asserts that a fiduciary relationship was created when it continued to extend credit to Creech based upon various representations made by both Creech and Callaway that CSI would pay Creech's debts, it has failed to produce any writing in support of its claim that CSI would assume liability for Creech's debts.[7] Therefore, we cannot say that the trial court's finding that no fiduciary or confidential relationship existed between Creech, Callaway and Ready Mix was clearly erroneous. Further, this finding supports the trial court's conclusion that Creech and Callaway did not owe a duty to Ready Mix and that therefore, Ready Mix's claim of constructive fraud must fail.[8]

In conclusion, we find that the trial court's findings are supported by the evidence and that those findings support its judgment in favor of Creech and CSI.

Judgment affirmed.

NAJAM and STATON, JJ., concur.

---

7. It is unclear from the parties' briefs whether Ready Mix extended credit to Creech in his individual capacity or as an officer of CSI.

8. Our disposition of Ready Mix's argument concerning fraud and constructive fraud makes it unnecessary to consider its argument concerning equitable estoppel, as that argument is predicated on a finding that Creech and Callaway actively or constructively defrauded Ready Mix.