Jay **GREENFIELD**, Appellant–Defendant,

v.

**ARDEN SEVEN PENN PARTNERS, L.P.,** Appellee–Plaintiff,

and

**City Bagels,** Appellee–Defendant.

No. 02A04–0104–CV–173.

Court of Appeals of Indiana.

Oct. 31, 2001.

Eric E. Snouffer, Snouffer & Snouffer, Fort Wayne, Indiana, Attorney for Appellant.

Stephen L. Fink, Matthew M. Hohman, Barnes & Thornburg, Fort Wayne, Indiana, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Jay Greenfield ("Greenfield") appeals the Allen Superior Court's order granting Arden Seven Penn Partners L.P.'s ("Arden") Motion to Set Aside the Stock Pledge Agreement executed by Greenfield and Jordan Scheinfeldt ("Scheinfeldt"). The motion, which was filed during proceedings supplemental, alleged that the

Stock Pledge Agreement was a fraudulent transfer of assets from Greenfield to Scheinfeldt. Greenfield raises two issues, which we restate as:

I. Whether the trial court erred when it considered exhibits not offered into evidence, which were attached to Arden's motions and briefs, when ruling on Arden's Motion to Set Aside the Stock Pledge Agreement; and

II. Whether there is sufficient evidence to support the trial court's judgment that the Stock Pledge Agreement is a fraudulent transfer.

We affirm.

### Facts and Procedural History

On August 20, 1997, a default judgment in the amount of $257,427.86 was entered against Greenfield in favor of Arden in Pennsylvania. Earlier that year, a judgment was entered against Greenfield by a Pennsylvania state court in favor of PNC Bank in the amount of $244,482.69. PNC Bank actively sought to enforce its judgment against Greenfield in Pennsylvania and seized assets totaling approximately $100,000. Both Arden and PNC Bank filed complaints in Allen Superior Court to domesticate their judgments in Indiana.

The trial court domesticated Arden's judgment against Greenfield on August 9, 1999. Arden discovered that it could not collect on its judgment against Greenfield via execution proceedings and filed a motion for proceedings supplemental. A hearing was held on that motion on November 1, 1999. At the hearing, Greenfield testified that he owned interests in several Indiana businesses.[1]

On November 1, 1999, Greenfield also testified that he entered into a Stock Pledge Agreement with Scheinfeldt. The agreement provides that Scheinfeldt "has agreed to acquire, by Assignment, a certain judgment entered against [Greenfield] and in favor of PNC Bank ... for the principal sum of Two Hundred Forty–Four Thousand, Four Hundred Eighty–Four and 69/100 Dollars ($244,482.69)." Appellee's App. p. 17. In exchange for the pledge of the assets listed in an exhibit to the agreement, Scheinfeldt "agree[d] to forego collection proceedings on said judgment unless [he] does not receive payment" as set forth in the agreement. *Id.* The agreement also provided that Greenfield was required to deliver all of the assets listed in the exhibit to Scheinfeldt. However, the agreement, which did not contain any terms regarding repayment, also stated that if Greenfield was not in default under the terms of the agreement, he would have the right to vote the pledged shares on all corporate questions and if necessary, Scheinfeldt would execute proxies in favor of Greenfield.

On September 12, 2000, Arden filed a motion requesting that the trial court set aside the Stock Pledge Agreement and find that it was a fraudulent transfer of assets from Greenfield to Scheinfeldt. A hearing was held on the motion on December 19, 2000. At the hearing, Greenfield testified that he could not satisfy the PNC Bank judgment; therefore, he asked J & J Realty, of which he owned fifty percent, to loan him money. He stated that Jack Niggeman, his partner, would not loan him any money without collateral, and Greenfield asked Scheinfeldt, who is his brother-in-law, to guarantee the loan from J & J Realty. Greenfield then testified that

---

1. This hearing was not held on the record; however, Arden's attorney filed an affidavit detailing Greenfield's testimony at the hear- ing. Also, at the final hearing in this matter, held on the record, Greenfield testified about these businesses.

Scheinfeldt asked Greenfield to enter into the Stock Pledge agreement and in return, Scheinfeldt would guarantee the loan from J & J Realty. Greenfield introduced into evidence a copy of a promissory note dated October 1, 1999, where J & J Realty loaned $50,000 to Greenfield. Greenfield stated that he paid PNC Bank an unspecified amount in exchange for its assignment of the judgment against Greenfield to Scheinfeldt.

On March 13, 2001, the trial court entered its Findings of Fact and Conclusions of Law. The trial court set aside the Stock Pledge agreement as void and fraudulent as it pertained to Arden. Greenfield was enjoined from transferring or disposing of any of the assets listed in the agreement. Greenfield appeals.

## I. Trial Court's Consideration of Certain Exhibits

■ Greenfield argues that the trial court erred when it considered exhibits not offered into evidence, which were attached to Arden's Brief in support of its Motion to Set Aside the Stock Pledge Agreement and its Post Hearing Brief. Greenfield does not refer to any specific exhibits in his Appellant's Brief but argues that the trial court should not have considered any exhibit which was not admitted at the

hearing, including: 1) copies of the judgments issued against Greenfield in Pennsylvania, 2) documents filed in *Scheinfeldt v. Greenfield*,[2] 3) letters regarding discovery requests written by attorneys for both parties, 4) attorney Matt Hohman's affidavit, and 5) a portion of a transcript of a deposition of Greenfield taken in connection with the Pennsylvania litigation.

In *Wallace v. Indiana Insurance Co.*, 428 N.E.2d 1361 (Ind.Ct.App.1981), our court considered a similar issue. In that case, the plaintiff filed a response and supplemental response to the defendant's motion for summary judgment, which included numerous unverified exhibits, which were not sworn to in any way and unsupported by affidavit. *Id.* at 1365. Our court stated that it would be improper for the trial court to consider them in opposition to the defendant's motion for summary judgment citing the principle that an unsworn statement or unverified exhibit does not qualify as proper evidence. *Id.* (citing *Pomerenke v. Nat'l Life and Accident Ins. Co.*, 143 Ind.App. 472, 241 N.E.2d 390 (1968)).[3]

The only exhibit in this case which was sworn and verified was Matt Hohman's affidavit. All other exhibits were unsworn,

2. The plaintiff in this case, which was also filed in Allen Superior Court, was originally PNC Bank, but Scheinfeldt was substituted as the plaintiff.

3. *See also McMahan v. Snap On Tool Corp.*, 478 N.E.2d 116, 124 n. 4 (1985) ("[d]ocuments attached to the answers to interrogatories were neither sworn statements nor certified exhibits ... and, therefore, were not qualified for consideration"); *In re Marriage of Hudak*, 428 N.E.2d 1333, 1336 (Ind.Ct.App. 1981) (Our court considered whether answers to interrogatories attached to Husband's motion for proceedings supplemental should have been considered by the trial court when it ruled on the motion. Wife argued that there was insufficient evidence to support the

trial court's garnishment order entered against her during proceedings supplemental. *Id.* at 1335. Husband contended that the garnishee-defendant's answers to interrogatories attached to his motion for proceedings supplemental were sufficient evidence that Wife was employed by garnishee-defendant and that there were no prior garnishments pending against her wages. *Id.* at 1336. Our court stated "answers to interrogatories may not be considered by the trial court for their probative value until the answers have been offered and admitted as evidence.... The fact that the answers to interrogatories were attached to [Husband's] motion did not relieve [Husband] of the burden of offering them as evidence." *Id.*)

uncertified, and/or unverified. Also, at the hearing, only two documents were offered and admitted into evidence: the Stock Pledge Agreement and the Promissory Note. Although the hearing clearly presented Arden with the opportunity to do so, it made no attempt to offer into evidence any exhibits other than the Stock Pledge Agreement.[4] The trial court, therefore, should not have considered the exhibits not offered into evidence that were unsworn, uncertified, and/or unverified, which includes every exhibit except attorney Hohman's affidavit. However, we must still determine whether there was sufficient evidence to support the trial court's judgment and will only consider Greenfield's testimony at the hearing, the Stock Pledge Agreement, the Promissory Note, and attorney Hohman's affidavit as we do so.

## II. Sufficiency of Evidence

 The trial court entered special findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A); therefore, we must determine whether the trial court's findings are sufficient to support the judgment. *Lee's Ready Mix and Trucking, Inc. v. Creech*, 660 N.E.2d 1033, 1037 (Ind.Ct.App.1996). In reviewing the judgment, first we must determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The trial court's judgment will be reversed only if clearly erroneous. *Id.* We will neither reweigh the evidence nor judge the credibility of witnesses. *Id.*

Greenfield argues that the trial court erred when it found that the Stock Pledge Agreement is a fraudulent transfer as defined in the Indiana Uniform Fraudulent Transfer Act. *See* Ind.Code § 32–2–7–1 to –21 (1998). Specifically, he contends that there is no evidence in the record that

indicates or suggests that the transfer was made with the intent to hinder, delay, or defraud Arden in any way.

 A judgment creditor who seeks to have a transfer set aside as fraudulent bears the burden of proving that such transfer was made with fraudulent intent. *See Med. & Prof'l Collection Servs., Inc. v. Bush*, 734 N.E.2d 626, 630 (Ind.Ct.App. 2000). "The question of fraudulent intent is deemed a question of fact. Lack of consideration alone is not enough to support a charge of fraud. Rather, fraudulent intent may be inferred from various factors or 'badges of fraud' present in a given transaction. . . ." *Diss v. Agri Bus. Intern., Inc.*, 670 N.E.2d 97, 99–100 (Ind.Ct.App. 1996) (internal citations omitted). These factors include:

1. transfer of property by a debtor during the pendency of a suit;

2. transfer of property that renders the debtor insolvent or greatly reduces his estate;

3. a series of contemporaneous transactions which strip a debtor of all property available for execution;

4. secret or hurried transactions not in the usual mode of doing business;

5. any transaction conducted in a manner differing from customary methods;

6. a transaction whereby the debtor retains benefits over the transferred property;

7. little or no consideration in return for the transfer; and

8. a transfer of property between family members.

*Otte v. Otte*, 655 N.E.2d 76, 81 (Ind.Ct. App.1995), *trans. denied.* "As no single indicium constitutes a showing of fraudulent intent per se, the facts must be taken together to determine how many badges of

4. The Promissory Note was admitted by Greenfield.

fraud exist and if together they amount to a pattern of fraudulent intent." *Id.*

Here, the trial court, as fact finder, found that several badges of fraud were present in the transfer of assets from Greenfield to Scheinfeldt. Greenfield testified that Scheinfeldt is his brother-in-law; therefore, the Stock Pledge Agreement is a transfer between family members. Also, the transfer occurred during the pendency of the litigation between Arden and Greenfield; indeed, the Stock Pledge Agreement was dated November 1, 1999, the same day as a proceedings supplemental hearing in this case. Greenfield further testified that all of his property except his income from employment and some real estate in Pennsylvania is subject to the Stock Pledge Agreement, and therefore, the trial court found that the transfer greatly reduced Greenfield's estate.

In addition, the Stock Pledge Agreement was but one of a series of contemporaneous transactions. Greenfield testified at the hearing that 1) the PNC Bank judgment was assigned to Scheinfeldt; 2) he confessed judgment to Scheinfeldt; 3) he consented to a writ of immediate execution upon the assets contained in the Stock Pledge Agreement; and 4) he consented to an order of attachment, which allows Scheinfeldt to attach all of those assets. The trial court correctly found that these transactions combined, stripped Greenfield of any property available for execution by Arden.

The Stock Pledge Agreement executed by Greenfield and Scheinfeldt also appears to be a transaction conducted in a manner differing from customary methods. Greenfield testified that he borrowed $50,000 from J & J Realty, a corporation in which he is a 50% shareholder. Greenfield stated that J & J Realty receives a net income of $700 per month. In light of this limited income stream, it is difficult to understand how J & J Realty could afford to make a $50,000 loan to Greenfield. Also, Greenfield testified that the Stock Pledge agreement was given to secure Scheinfeldt's agreement to guarantee the loan to Greenfield from J & J Realty. However, Greenfield stated that the $50,000 loan was used to obtain the assignment of the judgment from PNC Bank to Scheinfeldt rather than to negotiate a release of the judgment.

Additionally, the Stock Pledge Agreement lists the following assets pledged to Scheinfeldt:

1. Notes receivable from Indiana Lubricants, Inc. totaling $139,000
2. A note receivable from Merrillville Associates, Inc. in the amount of $38,398
3. Ownership interests in the following companies and percentages:
 a. Indiana Lubricants, Inc. 47.5 %
 b. ILI Realty Associates 30 %
 c. West Lafayette Realty Associates 20 %
 d. Merrillville Associates, Inc. 51 %
 e. Auto Associates Midwest 20 %
 f. Castleton Associates 40 %
 g. J & J Realty Enterprises 50 %
 h. White Glove Associates 20 %

Appellee's App. p. 19. Greenfield testified that the value of his ownership interests in these companies is approximately $50,000. He also stated that he has not received any payments on the notes receivable from Indiana Lubricants for several months. However, the value of the assets pledged to Scheinfeldt greatly exceed $50,000, the

amount of the loan Greenfield received from J & J Realty.[5] The trial court found that Greenfield's testimony that he pledged the assets to Scheinfeldt so that Scheinfeldt would assume a $50,000 contingent liability was questionable.

In addition, the Stock Pledge Agreement does not set out specific terms for payment, and Greenfield testified that he has made no payment under the agreement, nor has payment been requested. Greenfield also testified that the assets listed in the Stock Pledge Agreement had not been transferred to Scheinfeldt, and that he had received income from the assets since they were pledged.

All of this evidence, taken together, supports the trial court's findings, and the findings support the trial court's judgment that the Stock Pledge Agreement was a fraudulent transfer of assets from Greenfield to Scheinfeldt in an attempt to defraud Arden. Even without consideration of the unsworn and unadmitted documents contested by Greenfield, the Stock Pledge Agreement, the Promissory Note, and Greenfield's own testimony at the hearing provide sufficient evidence to support the trial court's decision.

### Conclusion

The trial court erred when it considered exhibits that had not been offered into evidence in rendering its judgment that the Stock Pledge Agreement was a fraudulent transfer. However, Greenfield's testimony, the Stock Pledge Agreement, and the Promissory Note, contain sufficient evidence to support the trial court's decision

that the Stock Pledge Agreement is a fraudulent transfer.

Affirmed.

DARDEN, J., and VAIDIK, J., concur.

---

**5.** The Promissory Note executed in October 1999, stated that the loan was for an amount up to $150,000; however, Greenfield testified that he only borrowed $50,000 from J & J Realty.