

**FILED**

Feb 28 2020, 9:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Robert E. Duff
Fishers, Indiana

ATTORNEY FOR APPELLEE

Liberty L. Roberts
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ashfaq Hussain and Azra Hussain, <br><br> *Appellants-Defendants,* <br><br> v. <br><br> Salin Bank & Trust Company, <br><br> *Appellee-Plaintiff,* <br><br> and <br><br> Indiana Department of Revenue, <br><br> *Defendant.* | February 28, 2020 <br><br> Court of Appeals Case No. 19A-MF-1786 <br><br> Appeal from the Hamilton Superior Court <br><br> The Honorable Jonathan M. Brown, Judge <br><br> Trial Court Cause No. 29D02-1203-MF-2759 |

**Altice, Judge.**

## Case Summary

[1]     Ashfaq and Azra Hussain (the Hussains) appeal the trial court's grant of
        summary judgment in favor of Salin Bank and Trust Company (Salin), claiming
        that genuine issues of material fact remain because an affidavit that Salin

submitted as designated evidence was hearsay, and the trial court ignored an affidavit that they had offered in response to Salin's motion for summary judgment. The Hussains further contend that the damage award for Salin was error because the trial court based its decision on inadmissible hearsay evidence.

[2] We affirm.

## Facts and Procedural History

[3] On September 12, 2008, the Hussains borrowed $221,937.26 from Salin, signed a note, and obtained a mortgage on certain real property in Noblesville to secure the loan. The agreement required the Hussains to repay Salin the original amount loaned with a regular interest rate of 7.75% and a default rate of 12.75%, along with late fees and attorneys' fees in accordance with the terms and conditions of the note. The Hussains were required to make 180 payments of $2,104.42 each month, with the first payment due on October 16, 2008. All subsequent payments were due on the 15th of the month, with a final payment due on September 15, 2023.

[4] At the loan closing, the Hussains tendered a check to Salin in the amount of $565 that represented the fees associated with securing the loan. The account had insufficient funds to cover the check and the check was returned to Salin. In response, Salin charged the Hussains a $20 non-sufficient funds (NSF) fee that it applied to the principal of the loan.

[5] When the first payment of $2,104.42 became due in October, the Hussains paid only $1,500. Salin charged the Hussains a late fee and another NSF fee connected to that payment. Over the course of the next several years, the Hussains made only partial payments and incurred late fees.

[6] On March 16, 2012, Salin filed a complaint on the note and to foreclose on the mortgage, seeking judgment against the Hussains for the unpaid principal balance due on the note with accrued interest, late charges, default-related expenses, attorneys' fees, costs, and other expenses incurred in the foreclosure action.[1] The Hussains answered the complaint, admitting that they executed the note but denied that Salin could foreclose on the mortgage.

[7] In December 2012, the Hussains filed for Chapter 13 Bankruptcy protection.[2] An arrearage account was created for the Hussains' payments to the trustee as part of the Bankruptcy plan. The plan provided for payments to the trustee and directly to Salin for the estimated arrearage of $32,700. An amended plan was created in December 2013 that provided for payment to the trustee and directly to Salin for an estimated arrearage of $29,803 on the note.

---

[1] Paragraph 24 of the complaint named the Indiana Department of Revenue (IDOR) as a defendant to assert its interest in the real estate pursuant to a tax warrant that had been issued in the amount of $3,932.59. Salin asserted that IDOR's interest was "subordinate to and inferior to" its secured rights to the real estate. *Appellant's Appendix Vol. II* at 24. IDOR did not answer the complaint and is not a party to this appeal.

[2] Three bankruptcy filings by Ashfaq Hussain and accompanying stays issued by the Bankruptcy Court throughout this litigation have prolonged these proceedings.

[8] The Hussains continued to make full or partial payments directly to Salin in addition to the payments made on the arrearage account through the Bankruptcy trustee until May 6, 2015. They stopped making direct payments to Salin on November 27, 2015.

[9] On June 28, 2016, the Hussains' Chapter 13 Bankruptcy was dismissed. Litigation in this case resumed, and on August 4, 2016, Salin filed a motion for summary judgment, claiming that the undisputed facts established that it was entitled to judgment as a matter of law, and the property should be sold. In support of its motion, Salin relied upon the note, mortgage, and an assignment of rents that the Hussains had executed, the complaint and answer to the complaint, a notice of default, a title search, an affidavit of attorneys' fees and the affidavit of John Frieburg as its designated evidence.

[10] The Hussains filed their response to the motion for summary judgment, admitting that they executed the note and mortgage and had made payments on the note. They argued, however, that Salin was not entitled to foreclosure because the designated evidence showed that Salin had materially breached the terms of the note before the Hussains had committed any breach. The Hussains also alleged that Salin miscalculated the amount due on the note.

[11] In their response, the Hussains offered the following designated evidence to the trial court: the affidavit of Marie McDonnell with supporting exhibits including deposition testimony, payment history records, NSF fee information, and an analysis of the Hussains' payment history. McDonnell had been retained as the

Hussains' mortgage fraud and forensic analyst, who averred, among other things, that Salin improperly administered the loan, that Salin's accounting of the Hussains' payments was incorrect, and that its servicing of the loan involved "unsound and unsafe" banking practices. *Appendix Vol. III* at 20-21. McDonnell also stated that "on October 1, 2008, Bank One returned the check for insufficient funds, and Salin charged Mr. Hussain a $20.00 NSF fee. On October 2, 2008, Salin increased the principal balance by $20.00 for this nonsufficient funds fee. . . . This increase in the principal balance amounts to a unilateral, unauthorized alteration in the terms of the Note by Salin Bank." *Id.* at 16. Thus, the Hussains claimed that McDonnell's affidavit raised a genuine issue of material fact as to whether Salin initially breached the contract that would extinguish the Hussains' liability.

[12] The trial court rejected the Hussains' first material breach argument and found that they were liable on the note and mortgage. The trial court granted summary judgment in Salin's favor on the issue of liability but determined that there were material facts in dispute as to the proper measure of damages.

[13] At the damages hearing that commenced on July 29, 2019, Ken Blough testified for Salin. Blough is the vice president and a commercial loan officer who heads the loan department at Horizon Bank (Horizon). Blough explained that Horizon and Salin had merged and that Horizon is Salin's successor. Blough further testified that his job duties included handling commercial loans that were struggling or in default, that he had personally handled the Hussains' loan, reviewed the note, mortgage, payment schedule, and payment records after the

merger, and "ran an independent calculation of the amortization of the note based on the payments made and the dates made." *Transcript Vol. II* at 48. Blough also explained that Salin's documents became the documents of Horizon and the Hussains' loan was integrated into Horizon's software systems after the merger.

[14] Blough testified as to the summary of the damages that the bank sought under the default terms of the loan and mortgage as set forth in one of Salin's exhibits. He also testified how Salin created a separate arrearage account as part of the Hussains' bankruptcy, and that payments from the trustee were applied to that account. Blough explained that the principal balance remained under the original account that had been set up for the Hussains to make payments.

[15] A different exhibit contained the amortization schedule that had previously been provided and offered into evidence by the Hussains that revealed a difference of approximately $2,800 from what was reflected in Salin's records. The exhibit also showed the interest that was due and had accrued since the last payment, along with Salin's costs in pursuing the foreclosure action.

[16] The Hussains objected to the exhibit on the basis of hearsay, arguing that Blough was precluded from authenticating the records because he was employed by Horizon rather than Salin. Salin responded that the business records exception to the hearsay rule applied and pointed out that notwithstanding its exhibits, the Hussains had already submitted the necessary records into evidence for the calculation of damages, including the request for

attorneys' fees, the documents regarding summary judgment, and the records relating to the collection of the loan.

[17] The trial court overruled the Hussains' objections, finding that the documents fell within the business records exception to the hearsay rule and were properly authenticated. The Hussains presented no witnesses at the damages hearing. After considering the evidence, the trial court entered damages for Salin in the amount of $242,718.47. The Hussains now appeal.

# Discussion and Decision

## I. Standard of Review

[18] In an appeal from a grant of summary judgment, we stand in the shoes of the trial court and apply a *de novo* standard of review. *Poiry v. City of New Haven*, 113 N.E.3d 1236, 1239 (Ind. Ct. App. 2018). Summary judgment is appropriate where the designated evidence establishes that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Row v. Holt*, 864 N.E.2d 1011, 1013 (Ind. 2007). We consider only those materials properly designated pursuant to Ind. Trial Rule 56 and construe all factual inferences and resolve all doubts in favor of the non-moving party. *Yung v. Hood's Gardens, Inc.* 24 N.E.3d 421, 424 (Ind. 2015). A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Id.* This court will affirm upon any theory or basis supported by the designated evidence. *Poiry*, 113 N.E.3d at 1239-40.

## II.  Mortgage Loan Defaults Generally

[19]  We initially observe that the elements of a *prima facie* case for the foreclosure of a mortgage are: (1) the existence of a demand note and the mortgage, and (2) the mortgagor's default.  *McEntee v. Wells Fargo Bank, N.A.,* 970 N.E.2d 178, 182 (Ind. Ct. App. 2012).  Ind. Code § 32-30-10-3(a) provides that "if a mortgagor defaults in the performance of any condition contained in a mortgage, the mortgagee or the mortgagee's assign may proceed . . . to foreclose the equity of redemption contained in the mortgage."  To establish a *prima facie* case that it is entitled to foreclose upon the mortgage, the mortgagee or its assign must enter into evidence the demand note and the mortgage, and must prove the mortgagor's default.  *Creech v. LaPorte Prod. Credit Ass'n,* 419 N.E.2d 1008, 1012 (Ind. Ct. App. 1981).  Once the mortgagee establishes its *prima facie* case, the burden shifts to the mortgagor to show that the note has been paid in full or to establish any other defenses to the foreclosure.  *Id.* 1012.

## III.  The Hussains' Contentions

### A.  Frieburg's Affidavit

[20]  The Hussains claim that summary judgment was improperly granted for Salin because Frieburg's affidavit did not satisfy the admissibility requirements of T.R. 56(E), as the affidavit was based on hearsay[3] and not on personal

---

[3] Hearsay is an out of court assertion offered in court to prove the truth of the matter asserted.  Ind. Evid. Rule 801(c).  Absent an exception to the rule, hearsay is inadmissible as evidence.  *In re E.T.,* 808 N.E.2d 639, 641 (Ind. 2004); Ind. Evid. Rule 802.

knowledge. Thus, the Hussains assert that because Salin relied solely on this affidavit to demonstrate the default, Salin failed to establish its *prima facie* case.

[21] T.R. 56(E) provides that

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

[22] When ruling on a summary judgment motion, the trial court will consider only properly designated evidence that would be admissible at trial. *D.H. by A.M.J. v. Whipple*, 103 N.E.3d 1119, 1126 (Ind. Ct. App. 2018), *trans. denied*. Such evidence does not include inadmissible hearsay contained in an affidavit. *See Holmes v. Nat'l Collegiate Student Loan Trust*, 94 N.E.3d 722, 725 (Ind. Ct. App. 2018). Nor does it include unsworn statements or unverified exhibits. *Greenfield v. Arden Seven Penn Partners, L.P.*, 757 N.E.2d 699, 702 n.3 (Ind. Ct. App. 2001), *trans. denied*. Although hearsay evidence is generally inadmissible, Indiana Evid. Rule 803(6) provides for a business records exception to the hearsay rule. To establish admissibility under this rule, the proponent of the hearsay evidence must show that

> (A) the record was made at or near the time by—or from information transmitted—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

*Id.*

[23] In support of their claim that Frieburg's affidavit failed to satisfy the requirements of T.R. 56 (E), the Hussains point to this court's opinions in *Zelman v. Capital One Bank (USA) N.A.,* 133 N.E.3d 244, 249 (Ind. Ct. App. 2019) and *Seth v. Midland Funding, LLC*, 997 N.E.2d 1139 (Ind. Ct. App. 2013) that discussed the business records exception to the hearsay rule set forth in Evid. R. 803(6).

[24] In *Seth*, the creditor brought an action against defendant Seth to recover the balance due on a credit card. 997 N.E.2d at 1140. Midland Funding's affidavit of debt was signed by Degel, an employee of the creditor's servicing agent. Degel averred in her affidavit that she relied on transactions made by companies other than the one for whom she worked and obtained her information only from a review of unspecified business documents that were

not attached to her affidavit. *Id.* The trial court granted summary judgment in favor of Midland Funding. On appeal, we reversed and determined that Degel's status as an employee of the creditor's servicing agent did not establish that "she had personal knowledge of any of the facts pertaining to Midland's complaint against Seth." *Id.* at 1142. Moreover, "Degel did not attach to her affidavit any of the records upon which she purported to rely." *Id.* Thus, we concluded that Midland Funding failed to designate evidence to make a *prima facie* case that it was entitled to summary judgment.

[25]     In *Zelman*, the affiant was a "Litigation Support Representative" employed by an agent and affiliate of Capitol One Bank. *Id.* at 48. The trial court admitted the affidavit and granted summary judgment for Capitol One. On appeal, a panel of this court reversed and found that the affidavit failed to designate admissible evidence establishing that Zelman had opened a credit card account with the bank or that Zelman owed the bank the amount that was sought in the complaint. More particularly, we observed that

> [N]either the "Customer Agreement" attached to Bank's complaint, nor Zelman's purported credit card statements attached to the summary judgment motion . . . were certified or sworn; therefore, they were inadmissible hearsay and were not proper Rule 56 evidence. . . .
>
> Further, the Affidavit of Debt does not authenticate those unsworn and unverified documents as records of regularly conducted business activity pursuant to the hearsay exception specified in Rule of Evidence 803(6). The affiant, a "Litigation Support Representative" employed by Bank's affiliate, stated that

she had "access to" the Bank's "relevant systems and documents . . . needed to verify" the information in the affidavit, but never states what those documents are. The affiant further states that she has "personal knowledge of the manner and method by which [Bank] creates and maintains certain business books and records, including computer records of customer accounts." However, she does not identify the "books and records" to which she refers. She also fails to identify the Customer Agreement attached to the complaint as "the Customer Agreement governing use of [Zelman's] account," or identify the Customer Agreement or credit card statements in Exhibit B as "computer records of customer accounts," Similarly, the affiant refers to the Bank "books and records reviewed," but does not identify any such documents.

Thus, the Affidavit of Debt did not lay a proper foundation to authenticate the Customer Agreement or credit card statements as business records admissible under Evidence Rule 803(6)'s hearsay exception. . . .

[T]he affiant's knowledge of the facts asserted in her affidavit "is limited to what she has gleaned from her review of unspecified business records," and her affidavit is, therefore, based entirely upon hearsay, in violation of Trial Rule 56(E). And the affiant's employment as a litigation support representative of Bank's affiliate does not, in itself, establish her personal knowledge of any of the facts relating to the complaint. . . . In addition, because the affiant explicitly states that her affidavit is based upon her personal knowledge of facts obtained from Bank's business records, she was required to attach to, or submit with, her affidavit sworn, certified, or self-authenticated copies of any such records upon which she relied. . . . She did not attach to or submit with her affidavit any such records, and her failure to do so means we must disregard her affidavit. T.R. 56(E). . . .

*Id.* at 248-49 (some citations omitted).

Unlike the cases discussed above, Frieburg was not an employee of a third party who had purchased the Hussains' debt from Salin. He was an employee of Horizon that had merged with Salin. Frieburg was the custodian of the records for Salin, and the designated evidence established that he had acquired knowledge of the Hussains' debt by personally examining the business records relating to their loan. Moreover, Frieburg did not refer to unspecified business records as did the affiants did in *Seth* and *Zelman*. Instead, Frieburg's affidavit specifically identified the promissory note and mortgage to which he referred.

Also, as the plain language of T.R. Rule 56(E) states, "[s]worn or certified copies *not previously self-authenticated* of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." (Emphasis added). In this case, the records referenced in Frieburg's affidavit were already in the record and authenticated. Frieburg specifically referred to the note and mortgage that were attached to the complaint. The complaint contained true and accurate copies of the note and mortgage executed by the Hussains, and they admitted to such in their answer to the complaint. The Hussains also submitted evidence of their payment history that showed their failure to comply with the terms of the note. *See Powell v. Am. Health Fitness Ctr. of Fort Wayne, Inc.*, 694 N.E.2d 757, 759-60 (Ind. Ct. App. 1998) (observing that once evidence has been designated to the trial court by one party, that evidence is deemed designated and the opposing party need not designate the same evidence).

Therefore, notwithstanding any alleged flaws in Frieburg's affidavit, the Hussains admitted that they executed the note and mortgage, along with their

failure to pay. And that evidence was already before the court. The Hussains further admitted that they made payments on the note and they submitted their payment history as part of the designated evidence. That history demonstrated that they had not made a payment since November 27, 2015, yet the note required payments through September 16, 2023. That evidence was not disputed, and it established all the required elements for a mortgage foreclosure. For all these reasons, the trial court did not err in admitting Frieburg's affidavit into evidence.

### B. McDonnell's Affidavit

[29] The Hussains argue that the trial court's grant of summary judgment for Salin must be set aside because McDonnell's affidavit presented a genuine issue of material fact as to whether Salin was the first to breach the agreement. The Hussains assert that Salin's initial breach occurred when it added the twenty dollar NSF fee to the principal due on the loan.

[30] The first material breach doctrine is described as follows:

> When one party to a contract commits the first material breach of that contract, it cannot seek to enforce the provisions of the contract against the other party if that other party breaches the contract at a later date. *Licocci* [*v. Cardinal Assoc.*], 492 N.E.2d [48,] 52 [(Ind. Ct. App. 1986)]. Whether a party has *materially breached* an agreement is a question of fact and is dependent upon several factors including:
>
> (a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

(b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;

(c) The extent to which the party failing to perform has already partly performed or made preparations for performance;

(d) The greater or less hardship on the party failing to perform in terminating the contract;

(e) The willful, negligent or innocent behavior of the party failing to perform;

(f) The greater or less uncertainty that the party failing to perform will perform the remainder of the contract.

*Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 917-18 (Ind. Ct. App. 2011) (emphasis added); *Wilson v. Lincoln Fed. Sav. Bank,* 790 N.E.2d 1042, 1048-49 (Ind. Ct. App. 2003).

[31] The sole evidence that the Hussains offered in support of their initial breach argument is from McDonnell, their forensic analyst. McDonnell averred in her affidavit that

> On October 1, 2008, Bank One returned the check for insufficient funds, and Salin charged Hussain a $20.00 NSF fee. On October 2, 2008, Salin increased the principal balance by $20.00 for this nonsufficient funds fee. . . . This increase in the principal balance amounts to a unilateral, unauthorized alteration in the terms of the Note by Salin Bank.

[32] *Appendix Vol. III* at 15. We note, however, that McDonnell failed to mention the language contained in the note that provides, "*payments are first to be applied to any accrued unpaid interest, then to principal, and then to any unpaid collection costs.*" *Appendix Vol. II* at 26 (emphasis added). The note provides that collection costs will be assessed to the Hussains and they do not dispute that the NSF fee is a collection cost.

[33] Moreover, the designated evidence established that Salin performed its obligation under the note and mortgage by providing the full amount of the loan principal to the Hussains on September 12, 2008. The $20 NSF fee in no way prevented the Hussains from obtaining the benefit of the loan. Moreover, the designated evidence established that the Hussains breached the terms of the loan on October 16, 2008 when they failed to make the initial payment. There is no evidence that Salin committed a material breach of the loan prior to that time. Thus, we conclude that the trial court correctly determined that the designated evidence established that Salin did not initially breach the terms of the note as a matter of law, and that Salin was not precluded from foreclosing on the property.

## C. Damages

[34] The Hussains next argue that the damage award must be set aside because the forty-one page exhibit that Salin offered into evidence regarding damages[4] was hearsay. The Hussains maintain that Blough, who testified on Salin's behalf, lacked the knowledge to lay an adequate foundation for the admissibility of the documents under the business records exception to the hearsay rule.

[35] Under the business records exception, "a person who has a familiarity with the records may provide a proper business records exception foundation even if he or she is not the entrant or his or her official supervisor." *Payne v. State*, 658 N.E.2d 635, 645 (Ind. Ct. App. 1995), *trans. denied*. To obtain admission under the business records exception, the proponent of an exhibit need only call an individual who has a functional understanding of the business's record-keeping process. *Id.* This could be the entrant, the entrant's supervisor, co-workers, a records custodian or any other such person. *Id.*

[36] The Hussains challenge Blough's testimony because he worked for Horizon—Salin's predecessor—and not directly for Salin. Accordingly, the Hussains argue that Blough was not qualified to lay the foundation for the admission of the documents. In support of their contention, the Hussains direct us to *Williams v. Unifund CCR, LLC,* 70 N.E.3d 375 (Ind. Ct. App. 2017) and *Holmes*.

---

[4] This exhibit was comprised of an itemization of damages, loan history printouts, appraisal reports, invoices for a title search, professional consulting fees, and affidavits for attorneys' fees.

In *Williams,* the defendant opened a credit card with Citibank and had accumulated a debt in the amount of $10,402.90. *Id.* at 377. Citibank sold a block of charged-off accounts, including Williams's account to Pilot, who in turn assigned the account to Unifund. Williams's account was transferred in a "large Excel file, which can contain anywhere from one to several thousand credit card accounts all displayed as a single line in that Excel spreadsheet." *Id.* The information listed on the spreadsheet that Citibank provided to Pilot included the account number, the date of the last payment, the account holder's name and social security number. Thereafter, Unifund Partners sold its receivables to Unifund, a debt-buying company. *Id.*

[37] Unifund filed a complaint against Williams alleging, among other things, breach of contract and unjust enrichment. At trial, Unifund offered testimony from an individual described as "Unifund's authorized representative and custodian of the records." *Id.* at 379. The witness testified that he was familiar with the standard business practices of Unifund, but was unfamiliar with Citibank's records or operations, records or bookkeeping methods, accounting methods, or regular business practices. *Id.* The trial court admitted these exhibits and ultimately entered judgment for Unifund. On appeal, this court reversed and held that because the testifying witness for Unifund lacked knowledge of Citibank's regularly conducted business activities and record keeping, he could not lay a foundation for the admission of the exhibit under the business records exception. *Id.*

In *Holmes*, the plaintiff co-signed a loan and credit agreement with Charter One Bank (Charter One). 94 N.E.3d at 723. Thereafter, Charter One sold a pool of student loans to NCSLT. NCSLT filed a complaint against Holmes to collect the loan balance and accrued interest. NCSLT filed a motion for summary judgment and designated the affidavit of Jefferis, an employee of Transworld Systems, Inc., NCSLT's servicer, in support of its motion for summary judgment. *Id.* at 724. Jefferis averred in her affidavit that she was the designated custodian of records for Transworld, was familiar with the process by which it received prior account records, and that it was Transworld's regularly-conducted business practice to incorporate prior loan records into its own business records. *Id.* The trial court entered summary judgment for NCSLT.

On appeal, a panel of this court reversed and held that

> [T]he Jefferis affidavit provided no testimony to support the admission of the contract between Holmes and Charter One Bank or the schedule of pooled loans sold and assigned to National Collegiate Funding, LLC, and then to NCSLT, as business records pursuant to Evidence Rule 803(6). There was no testimony to indicate that Jefferis was familiar with or had personal knowledge of the regular business practices or record keeping of Charter One Bank, the loan originator, or that of NCSLT regarding the transfer of pooled loans, such that she could testify as to the reliability and authenticity of those documents. Indeed, Jefferis offered no evidence to indicate that those records were made at or near the time of the business activities in question by someone with knowledge, that the records were kept in the course of the regularly conducted activities of either Charter One or NCSLT, and that making the

records was part of the regularly conducted business activities of those third-party businesses. In *Speybroeck*, this Court stated that, pursuant to Trial Rule 803(6), one business 'could not lay the proper foundation to admit the records of another business because the requesting business lacked the personal knowledge required to ensure reliability.' *Id*. at 821. . . . Because the Jefferis affidavit is insufficient to support the admission of two of the business records necessary for NCSLT to establish its prima facie case, summary judgment is inappropriate.

*Id.* at 725-26.

[40] Unlike the circumstances in these two cases where the witnesses were attempting to lay a foundation for the records of another business that had sold its accounts, Blough was testifying on behalf of a company for whom he worked that had merged with another. As Salin no longer exists, Horizon is vested with all the rights, duties and records that previously were Salin's. *See Markham v. Prutsman Mirror Co.,* 565 N.E.2d 385, 386 (Ind. Ct. App. 1991) (observing that a successor corporation generally becomes vested with rights and assumes the burdens of the first corporation).

[41] In this case, the evidence established that the Hussains' loan was integrated into Horizon's software systems, and Blough testified that he had personal knowledge of those systems and the documents in the exhibit that established the payoff amount of the loans. Blough's duties included handling commercial loans that were struggling or in default, and the Hussains' loan was one of those. Blough personally handled the Hussains' loan from the time of the merger in April of 2019, and had reviewed the note, mortgage, financial

records, and payment schedule. Blough acknowledged that all of those documents were records that the bank regularly maintained for loans, are business records upon which the bank relies, and that he is the custodian of those records. Blough also explained that he personally "[ran] the numbers based upon the payments that were made on [the Hussains'] loan" and determined that "the amount due was consistent with what was reflected in the bank's documents." *Transcript Vol. II* at 46, 48. In light of these circumstances, we agree with the trial court that Blough laid the proper foundation for the admission of these documents under the business exception to the hearsay rule.

[42] Notwithstanding these exhibits and Blough's testimony, we also note that the Hussains' payment history was attached to McDonnell's affidavit as part of their designated evidence. Inasmuch as these records that included an amortization of the payments were already made a part of the record, the Hussains cannot be heard to complain that the trial court erred in admitting those documents. *See, e.g., AutoXchange.com v. Dreyer & Reinbold, Inc.*, 816 N.E.2d 40, 46 (Ind. Ct. App. 2004), (observing that because the appellants had submitted a copy of a check as part of its own designated evidence, they were prohibited from objecting to the admission of that evidence), *trans. denied.* For all these reasons, we conclude that the trial court did not abuse its discretion in admitting the documents into evidence. Thus, summary judgment was properly entered for Salin and the damage award stands.

[43] Judgment affirmed.

Robb, J. and Bradford, C.J., concur.